UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCORPIO 8283 LLC, | : |
| Plaintiff, | : : : |
| -against- | : No. 08 CV 510 (CLB) : **FILED BY ECF** |
| MYCA, LLC and 2220 EQUITIES MANAGEMENT LIMITED PARTNERSHIP, | : : : |
| Defendants. | : : |

## DECLARATION OF SARA MINSKOFF ALLAN
## IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT

SARA MINSKOFF ALLAN, being duly sworn, deposes and says:

1.      I am a member of MYCA, LLC, a Delaware limited liability company.  MYCA is a partner in and owns a 17.6% partnership interest in Court-Martine Associates, the New York general partnership that plaintiff Scorpio 8283 LLC ("Scorpio") seeks to dissolve in the above-captioned litigation.  The statements in this affidavit are based on my own personal knowledge.  I am over the age of majority and competent to testify to the matters described herein.

2.      Court-Martine's primary asset is a 75% partnership interest in a second partnership known as 82nd-83rd Street Venture.  82nd-83rd Street Venture is a New York general partnership that owns and operates commercial real estate located at 167–183 Martine Avenue and 39–55 Court Street in White Plains, New York (the "Property").  MYCA also is a partner in 82nd-83rd Street Venture, owning a 6.25% partnership interest.

3.      Plaintiff Scorpio 8283 LLC ("Scorpio") owns a 41.2% partnership interest in Court-Martine Associates.  Upon information and belief, Scorpio is owned and/or controlled by a trust controlled by Michael and Patricia Breede, residents of Connecticut.

4.  .  Defendant 2220 Equities Management Limited Partnership ("2220 Equities") is a partner in Court-Martine Associates, owning a 41.2% partnership interest. The principals of 2220 Equities are Alan Minskoff and his wife Royanne Minskoff. Alan and Royanne Minskoff are partners in 82nd-83rd Street Venture, owning a 7.8125% partnership interest.

5.  Upon information and belief, Pisces 8283 LLC owns a 7.8125% interest in 82nd-83rd Street Venture. Upon information and belief, Pisces 8283 LLC is owned and/or controlled by a trust that also is controlled by Michael and Patricia Breede, and is a citizen of Connecticut.

6.  Stacey Minskoff-Essenfeld also is a partner in 82nd-83rd Street Venture, owning a 3.125% partnership interest. Ms. Minskoff-Essenfeld is a resident of Connecticut.

7.  Jean Minskoff Grant is not a partner in Court-Martine Associates or in 82nd-83rd Street Venture, but owns partnership interests in, or owns and/or controls entities that own partnership interests in, several other Minskoff family partnerships.

8.  For several years, Grant has exercised control over the management of properties owned by several Minskoff family real estate partnerships through Minskoff Grant Realty & Management Corporation ("MGRMC"), including the Property owned by 82nd-83rd Street Venture. I understand that Grant controls MGRMC. Grant has exercised management authority, and paid herself or her company management and other fees from partnership accounts, over MYCA's objections.

9.  MYCA has disagreed with Grant over a number of matters affecting the partnerships and their properties, including, *inter alia*, insurance, leasing, capital expenditures, and the fees collected by MGRMC. MYCA also believes that Grant and her company do not provide it with sufficient information about matters affecting the partnerships and their properties

2

and are not responsive to MYCA's questions, concerns or interests. In some circumstances, Grant has failed or refused to provide MYCA with sufficient information for MYCA to be able to determine what actions Grant and her company are taking or have taken with respect to the properties, and whether the properties are being managed in the best interests of the partnerships.

10.     2220 Equities shares MYCA's concerns about Grant's management. MYCA, 2220 Equities and their principals have come to agreement that they do not want Grant or MGRMC to manage properties owned by partnerships where MYCA, 2220 Equities, or their principals are partners. In 2007, MYCA and 2220 Equities decided to cause those partnerships where they together owned a majority-in-interest to replace Grant as property manager with a third-party managing agent.

11.     Accordingly, on or about November 30, 2007, telephonic partnership meetings were held with respect to five partnerships where MYCA, 2220 Equities or their principals hold a majority of the partnership interests, including Court-Martine Associates and 82nd-83rd Street Venture. As a result of these meetings, 82nd-83rd Street Venture elected, pursuant to majority vote, to hire Armstrong Realty Management ("Armstrong"), an independent, third-party managing agent, to manage the Property effective January 1, 2008.

12.     Attending the November 30, 2007, partnership meeting for Court-Martine Associates were MYCA, represented by me; 2220 Equities, represented by Royanne Minskoff; and Scorpio, represented by Michael Breede. Attending the partnership meeting for 82nd-83rd Street Venture were MYCA; Royanne Minskoff, for herself and for Alan Minskoff; and Pisces 8283 LLC, represented by Michael Breede; and principals of all partners in Court-Martine Associates. The vote for retaining Armstrong to manage the property owned by 82nd-83rd Street Venture was 4 in favor (MYCA, Royanne

3

Minskoff, Alan Minskoff, and Court-Martine Associates), 1 against (Pisces 8283 LLC). The votes in favor represented 89.0625% of the partnership interests. A true and correct copy of the minutes of these meetings is annexed hereto as Exhibit 1.

13.    Thereafter, on or about December 11, 2007, Royanne Minskoff and I, on behalf of Court-Martine Associates and 82nd-83rd Street Venture, caused a letter to be sent to MGRMC informing it that new property management had been selected and directing MGRMC to turn over relevant partnership books, records and property. A true and correct copy of this letter is annexed hereto as Exhibit 2.

14.    Each of the partnerships that had elected to retain new property management later finalized and entered into management agreements with Armstrong dated as of January 1, 2008. A true and correct copy of 82nd-83rd Street Venture's management agreement with Armstrong is annexed hereto as Exhibit 3.

15.    Despite instructions from the partnerships, Grant and her company did not turn over the partnership books and records. Instead, on or about January 18, 2008, Grant and Patricia and Michael Breede, jointly represented by the same counsel, caused five lawsuits to be filed in federal and state court seeking the dissolution of five partnerships, including the above-captioned action seeking to dissolve Court-Martine Associates. This action does not seek the dissolution of 82nd-83rd Street Venture and Pisces 8283 LLC, Stacey Minskoff-Essenfeld and Alan and Royanne Minskoff are not joined as parties.

16.    On or about January 24, 2008, four partnerships having management agreements with Armstrong filed an action against MGRMC in New York State Supreme Court, New York County, seeking an order directing MGRMC to turn over partnership books, records and property to enable Armstrong to perform under its management agreements. This action is styled *Post-*

*Broadway et al. v. Minskoff Grant Realty Management Corporation*, Index No. 08/600217 (N.Y. Sup. Ct.). The four partnerships are 77th Queens Associates, Halstead-Harrison Associates, 82nd-83rd Street Venture and Post-Broadway Associates a/k/a 59 South Broadway Venture. MYCA and 2220 Equities own or control a majority-in-interest of each of these four partnerships.

17.    Grant's refusal to honor or recognize the decisions of the partnerships to retain new, third-party property management and her refusal to surrender her control over the partnerships' books, records, accounts and other property have led to even greater conflict and distrust. MYCA has no confidence that Grant will follow the directions of the partnerships on any matter affecting the partnerships or their properties or that she will consider the interests and wishes of the partners, other than herself or her allies the Breedes.

18.    I declare under penalty of perjury that the foregoing is true and correct.

Executed:    February 28, 2008
Palm Beach, Florida

Sara Minskoff Allan

# EXHIBIT 1

# 82nd-83rd Street Venture
# Court Martine Associates

## Minutes of Partnership Meetings
## Friday, November 30, 2007

A meeting of the partners of Court Martine Associates via teleconference was called to order on November 30, 2008 at 3.06pm EST.

The following partners were present:

    Royanne Minskoff (2220 Equities Management LP)

    Sara Minskoff Allan (MYCA, LLC)

    Michael Breede (Scorpio 8283 LLC)

The meeting was chaired by Robb Allan on behalf of MYCA, LLC.

Mr. Allan moved to nominate Royanne Minskoff to represent Court Martine Associates at a subsequent meeting of 82nd-83rd Street Venture. Mr. Breede seconded the motion. The motion passed unanimously.

Due to misunderstanding, the motion was re-moved by Robb Allan and seconded by Royanne Minskoff. The motion passed with 2 in favor and 1 opposed.

After further discussion, Royanne Minskoff moved to rescind the previous motion and Sara Minskoff Allan seconded the motion to rescind. The motion to rescind passed unanimously.

The meeting adjourned at 3.12pm EST.

❈

A meeting of the partners of 82nd-83rd Street Venture via teleconference was called to order on November 30, 2008 at 3.12pm EST.

The following partners were present:

Royanne Minskoff

Sara Minskoff Allan

Michael Breede (Pisces 8283 LLC)

Mr. Allan presented a report on the status of legal representation of the partnership.

The partners reviewed and discussed a management proposal provided by Armstrong Realty Management, Inc.

Robb Allan presented a motion to:

- hire Armstrong Realty Management Corp. effective January 1, 2008;
- instruct Minskoff Grant Realty and Management Corp. (MGRMC) to deliver to Armstrong Realty Management Corp all partnership assets, keys, records, and documents by December 31, 2007;
- instruct MGRMC to cease all leasing activity effective immediately.

The motion was seconded by Royanne Minskoff. The motion passed by a vote of 89% in equity of the partners attending.

The meeting was adjourned at 3.28pm EST.

Respectfully,


Robb Allan

# EXHIBIT 2

# COURT MARTINE ASSOCIATES

December 11, 2007

*Via email and Federal Express*

Jean Grant
Minskoff Grant Realty & Mgmt. Co.
1350 Avenue of the Americas
New York, NY 10019

**Subject: replacement of property management and leasing services**
**Court Martine Associates**

Dear Ms. Grant:

Please be advised that, pursuant to a vote of the partnership at Court Martine Associates, we hereby inform you that the partnership has elected to retain the services of a successor management firm (Armstrong Realty Management, Corp.) and leasing firm, effective January 1, 2008.

This advice is not an acknowledgment that the partnership is bound by any of the purported management and leasing agreements that your office claims to have with the partnership. Among other things, despite repeated requests, your office has failed to provide these agreements to the partners.

Please assemble and be prepared to deliver all books, electronic records, checks, funds, bank statements, leases, related correspondence, and other partnership records and property to us or to our designated agents at the end of the month of December, 2007. You or your accountants should ensure that you retain copies of such documents as you consider necessary to prepare a final accounting of your services to the partnership.

Please acknowledge receipt of this letter at your early convenience.

Sincerely,

Sara Minskoff Allan
Partner

Royanne Minskoff
Partner

cc:    Robb Aley Allan
       Alan Minskoff
       Stacey Essenfeld
       Michael Breede

# EXHIBIT 3

# TABLE OF CONTENTS

**Page**

ARTICLE I COMMENCEMENT DATE ...................................................................................**1**

    Section 1.1        Commencement Date .................................................................**1**

ARTICLE II MANAGER'S RESPONSIBILITIES...................................................................**1**

    Section 2.1        Management...........................................................................**1**
    Section 2.2        Employees, Independent Contractor ....................................2
    Section 2.3        Schedule of Employees...........................................................2
    Section 2.4        Compliance With Laws ..........................................................2
    Section 2.5        Approved Budgets ..................................................................2
    Section 2.6        Collection of Rents and Other Income ...............................3
    Section 2.7        Repairs...................................................................................4
    Section 2.8        Capital Expenditures ............................................................4
    Section 2.9        Service Contracts...................................................................4
    Section 2.10      Taxes, Mortgages .................................................................5

ARTICLE III INSURANCE ..............................................................................................5

    Section 3.1        Manager's Insurance Requirements.....................................5
    Section 3.2        Catastrophic Loss ..................................................................5
    Section 3.3        Procurement of Permanent Repairs .....................................6
    Section 3.4        Liability Claims .....................................................................6
    Section 3.5        Procurement of Insurance Coverage ...................................5
    Section 3.6        Additional Insured ...............................................................7
    Section 3.7        Waiver of Subrogation..........................................................7
    Section 3.8        Hold Harmless Agreement....................................................7
    Section 3.9        Insurance Records .................................................................7

ARTICLE IV FINANCIAL REPORTING AND RECORDKEEPING ....................................7

    Section 4.1        Books of Accounts ................................................................7
    Section 4.2        Financial Reports...................................................................8
    Section 4.3        Supporting Documentation ..................................................8
    Section 4.4        Annual Financial Statements and Tax Returns ...................8
    Section 4.5        Projections.............................................................................8
    Section 4.6        Reporting Requirements .......................................................9

ARTICLE V OWNER'S RIGHT TO AUDIT.........................................................................9

    Section 5.1        Owner's Right To Audit.........................................................9

NY #1226128 v3

**TABLE OF CONTENTS**
(continued)

**Page**

ARTICLE VI BANK ACCOUNTS ................................................................9

    Section 6.1    Operating Account ..........................................................9
    Section 6.2    Security Deposit Account ...............................................10
    Section 6.3    Lockbox Accounts ..........................................................10

ARTICLE VII PAYMENT OF EXPENSES ...............................................10

    Section 7.1    Manager's Cost To Be Reimbursed .................................10
    Section 7.2    Costs Eligible For Payment From Operating Account ........10

ARTICLE VIII MANAGER'S COST NOT TO BE REIMBURSED ...............11

    Section 8.1    Non-Reimbursable Costs .................................................11

ARTICLE IX INSUFFICIENT GROSS REVENUE ...................................12

    Section 9.1    Priorities ..........................................................................12
    Section 9.2    Statement of Unpaid Items...............................................12
    Section 9.3    Segregation of Accounts ..................................................12

ARTICLE X COMPENSATION ...............................................................13

    Section 10.1   Compensation for Management Services ..........................13
    Section 10.2   Payment of Compensation ...............................................13

ARTICLE XI TERMINATION ..................................................................13

    Section 11.1   Term and Termination .....................................................13
    Section 11.2   Termination By Notice ....................................................13
    Section 11.3   Other Terminations By Owner..........................................14
    Section 11.4   Final Accounting .............................................................14
    Section 11.5   Outstanding Contracts/Unliquidated Obligations .............14
    Section 11.6   Termination for Cause .....................................................14
    Section 11.7   Limitation on Liability.....................................................15

ARTICLE XII NOTICES AND DIRECTIONS ..........................................15

    Section 12.1   Notices ............................................................................15
    Section 12.2   Directions ........................................................................15

ARTICLE XIII DISPUTE RESOLUTION...................................................16

    Section 13.1   Mediation ........................................................................16
    Section 13.2   Arbitration.......................................................................16

ii

**TABLE OF CONTENTS**
(continued)

Page

ARTICLE XIV GENERAL PROVISIONS, ETC..................................................................17

    Section 14.1    No Assignments ..........................................................................17
    Section 14.2    Pronouns .....................................................................................17
    Section 14.3    Amendments ...............................................................................17
    Section 14.4    Headings .....................................................................................17
    Section 14.5    Representations ...........................................................................17
    Section 14.6    No Partnership.............................................................................18
    Section 14.7    Complete Agreement...................................................................18

NY #1226128 v3 [RAA 1/4/08]

# MANAGEMENT AGREEMENT

This Management Agreement (the "Agreement"), dated as of this 1st day of January, 2008, by and between **82nd-83rd Street Venture** (hereinafter called "Owner"), and **Armstrong Realty Management Corp.** (hereinafter called "Manager");

## WITNESSETH:

WHEREAS, the Owner owns or, if not the Owner, is the entity that has the right to collect rents from and manage the property known as 39-55 Court Street and 167, 171-183 Martine Avenue, White Plains, New York (hereinafter called the "Property");

WHEREAS, the parties wish to provide that as of the date hereof the Manager shall provide the management services for the Property described herein.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE I

## COMMENCEMENT DATE

### Section 1.1    Commencement Date

The Manager's responsibilities under this Agreement are effective as of the date hereof, and shall continue until termination as provided in Article XI.

## ARTICLE II

## MANAGER'S RESPONSIBILITIES

### Section 2.1    Management

Upon the terms and conditions set forth in this Agreement, Owner hereby engages Manager as its agent to manage, operate and maintain the Property in an efficient manner, applying customary and acceptable management techniques appropriate for the nature of the Property. Manager shall act as a fiduciary with respect to the proper protection of and accounting for Owner's assets.

NY #1226128 v3 [RAA 1/4/08]

**Section 2.2    Employees, Independent Contractor**

In taking any action under this Agreement, Manager shall be acting only as agent for Owner and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of principal and agent, or as requiring Manager to bear any portion of losses arising out of or connected with the ownership or operation of the Property. Manager shall not at any time during the period of this agreement be considered an employee of Owner. Neither party shall have the power to bind or obligate the other.

**Section 2.3    Schedule of Employees**

Manager will provide such on-site building, management, administration and service personnel as necessary for the proper operation and maintenance of the Property, so that the Property will be operated, maintained and staffed in a manner consistent with industry practice for facilities of a similar nature, or as may be required by union contracts affecting the Property. Unless otherwise agreed, such personnel shall be individual independent contractors, retained on a part-time basis by Manager, its subsidiaries or affiliates, or persons in the employ of other firms, corporations or persons which may be engaged by Manager as independent contractors in connection with the servicing, operation and maintenance of the Property. The expense of such personnel shall be a expense chargeable to the Property and the responsibility of Owner and will be billed to the Property by Manager. Manager will, upon the request of Owner, provide Owner with a schedule supporting such charges.

**Section 2.4    Compliance With Laws**

Manager shall comply, at Owner's cost and expense, with all governmental laws, ordinances, rules or regulations affecting the Property or its management of the Property. Manager agrees to notify Owner in writing of any notice of violation or requirement of any such laws, ordinances, rules or regulations relating to the Property or the use made thereof by any tenant or occupant when a notice is received. Manager may also recommend a course of action to achieve compliance as specified in the notice.

Manager shall, at Owner's cost and expense and in performance of its services, abide by the terms of any ground lease, space lease, mortgage, deed of trust or other security instrument binding on or affecting the Property subject to this Agreement, copies of which documents shall be delivered to Manager in sufficient time to allow Manager to review same prior to complying. Manager shall not be required to make any payment or incur any liability in order to comply with any such terms or conditions of any such instruments.

**Section 2.5    Approved Budgets**

Manager shall prepare and submit to Owner a proposed operating budget and a proposed capital budget for each calendar year. Manager will use its best efforts to deliver the proposed budget to Owner sixty (60) days prior to the beginning of each annual accounting period or, as to

the initial year of this Agreement, within sixty (60) days after the effective date of this Agreement.

The Owner will consider the proposed budgets and then will consult with the Manager prior to the beginning of the annual accounting period. The **Operating Budget** submitted to Owner shall be deemed approved when written approval has been received from the Owner by a majority in interest of the partners or members of the Owner; if Owner's written approval is not received by Manager within thirty (30) days after submission, the budget is deemed disapproved, and the Manager shall, to the extent feasible, proceed in accordance with the budget applicable to the current accounting period. Owner shall provide Manager with the Approved Operating Budget and the Approved Capital Budget for the year immediately preceding the effective date of this Agreement.

Manager shall have the authority to expend funds from the Operating Account which are in the "Approved Operating Budget" up to $10,000, except for Real Estate Taxes, as set forth in Section 2.10. All other expenditures shall require the written approval of a majority in interest of the partners or members of the Owner. The Owner shall undertake to respond to requests for written approval within five (5) business days of the receipt thereof from Manager. Owner shall be solely liable and responsible for any fees, costs or penalties incurred due to a delay by Owner in responding to Manager's request for approval.

Manager agrees to use due diligence and to employ reasonable efforts to ensure that the actual costs of maintaining and operating the Property do not exceed the Approved Budgets, which shall not require Manager to institute litigation. Manager shall secure Owner's prior written approval for any expenditure which exceeds the amount budgeted for the year for any major budget category by $3,000 or 10% of the amount budgeted, whichever is greater. During the calendar year, the Manager agrees to give Owner notice of any major increases in costs and expenses which were not reflected in the Approved Operating Budget or Approved Capital Budget.

**Section 2.6     Collection of Rents and Other Income**

Manager will use its best efforts to bill and to collect all rents (including escalation billings resulting from tenant participation in increases in expenses, taxes, and common area maintenance charges) and other charges which may become due from any tenant or from others. Manager shall identify, bill and collect any income due the Owner for miscellaneous services provided to tenants or others. All monies so collected shall be deposited in the Operating Account. Manager may not terminate any lease, lock out a tenant, institute a suit for rent or for the possession of the leased premises without the prior written approval of Owner.

In connection with such suits or proceedings, or other matters requiring the retention of legal counsel, legal counsel designated by Owner will be retained. Expenses actually incurred by Manager in bringing such approved suit or proceeding will be paid from the Operating Account if sufficient to pay for same or from Owner if the funds in the Operating Account are not sufficient. Manager shall not adjust off the books any income items in excess of $500 without prior approval of Owner.

**Section 2.7     Repairs**

The Manager shall supervise all repairs, decorations and alterations. No single expenditure for any repair shall exceed $3,000, unless specifically budgeted or arising on an emergency basis. Prior written approval of the Owner will be required except for emergency repairs, building safety, or emergencies threatening life, persons or Property that would result in further damage, loss, or liability exposure. As soon as practicable, Manager may make such repair as is necessary, at the expense of the Owner and paid from the Operating Account, and notify Owner of the nature of the occurrence and the nature and cost of the remedy implemented by Manager. Actual expenses for materials and labor for such purposes will be paid for from the Operating Account.

**Section 2.8     Capital Expenditures**

The Approved Capital Budget shall not constitute an authorization for Manager to expend any money. Any capital expenditure in excess of $10,000 must be specifically authorized by Owner. With respect to the purchase and installation of major items of new or replacement equipment (including, without limitation, elevators, heating or air conditioning, incinerators, refrigerators, stoves, washing machines, furniture, and furnishings, rugs, carpets, or other floor coverings, etc.) the Manager shall make specific and detailed recommendations to Owner. However, Manager may not implement such recommendation without written approval of the Owner. The cost of implementation shall be paid from the Operating Account if sufficient to pay for same or by Owner if the funds in the Operating Account are not sufficient. All new or replacement equipment exceeding $10,000 in cost for a single item shall be awarded on the basis of competitive bidding, solicited in the following manner; unless otherwise approved by Owner:

(a)     Competitive written bids from three (3) qualified bidders shall be obtained for each purchase.

(b)     Each bid will be solicited to conform with specifications prescribed by Manager to assure uniformity.

(c)     Manager shall provide Owner with all bid responses accompanied by Manager's written recommendations as to the acceptable bid. Manager may consider factors other than price in evaluating contractor's bids and services.

(d)     Owner shall be free to accept or reject any and all bids. Owner will communicate to Manager its acceptance or rejection of bids. Owner shall pay for capital expenses by transfer of funds to the Operating Account.

**Section 2.9     Service Contracts**

Manager may in the name of and at the expense of Owner, contract for those utilities and other building operation and maintenance services Manager shall deem necessary. No service contract shall be for a term exceeding one year without the prior written approval of Owner. Manager will, at Owner's expense, purchase and keep the Property furnished with all necessary supplies.

### Section 2.10   Taxes, Mortgages

The Manager shall obtain and verify bills for real estate and personal property taxes, improvement assessments, and other like charges which are or may become liens against the Property and recommend payment or appeal.  Manager will cooperate with consultants hired by Owner to defend against, seek revision of, or appeal from, any tax, assessment or charge deemed by Owner to be improper or excessive; or in the alternative, Manager will pay such tax, assessment or charge under protest and cooperate with Owner in seeking a refund.  Manager shall forward such bills to Owner for payment by Owner if received by Manager in advance of the due date, to permit Owner to avoid a penalty for late payment or to permit Owner to take advantage of discounts.  Unless otherwise instructed by owner, Manager shall process such bills for payment from the Operating Account.  Owner may forward all payment obligations for the Property to Manager, in which event Manager shall be responsible for making payments for the benefit of the Property on account of any ground lease, mortgage, deed of trust, or other security instruments, unless otherwise directed, which payments shall be made from the Operating Account, if sufficient or by Owner if the funds in the Operating Account are not sufficient.

## ARTICLE III

## INSURANCE

### Section 3.1   Manager's Insurance Requirements

Manager will maintain valid and collectible insurance relating to its duties as agent.  The insurance program relating to Manager's duties as agent, will comply, at Manager's cost, with the applicable federal and state regulations and with the requirements of any secured lender to Owner.  The program will address liability insurance, workers compensation insurance, and fidelity & surety insurance as agreed by Manager and Owner to be appropriate.  Manager will provide Certificates of Insurance or other evidence of insurance required by Owner or Owner's insurance company or any secured lender to Owner.

### Section 3.2   Procurement of Insurance Coverage

Owner shall obtain fire, casualty and liability insurance coverage for the Property under blanket or individual policies.  Manager shall cooperate in Owner's efforts to obtain such coverage, and shall provide Owner with its recommendations concerning coverages, including the amount of insurance required to protect the Property and the availability and types of insurance to be considered for purchase.

### Section 3.3   Catastrophic Loss

If Manager is unable to contact Owner, Manager is hereby authorized to act as attorney-in-fact for Owner in the event of catastrophic damage to Owner's Property.  Manager is authorized to expend Owner's funds to effect:

(a)    Temporary repairs required to protect the property from further damage;

(b)    Reduction of loss; or the

(c)    Security of the Property and tenants' assets.

This authority will remain in force until cancellation by Owner.  The actions taken by Manager will be adopted by Owner as Owner's actions and Manager will be held harmless for actions taken under authority of this paragraph.  Manager will use its best efforts to give notice to Owner of catastrophic loss, the actions taken and, recommended actions and follow Owner's instructions concerning such loss or damage.  In expending funds in the event of catastrophic loss, Manager will comply with the requirements of any secured lender to Owner.

### Section 3.4    Procurement of Permanent Repairs

Manager shall be authorized to:

(a)    Arrange for permanent repairs to Owner's Property, including the selection and retention of catastrophic reconstruction specialists, construction managers, or others, who, in Manager's opinion, are required to facilitate reconstruction of the Property, and the resumption of business activities, at no cost to Manager;

(b)    Perfect indemnity claims with insurers of the Property, including the enforcement of all rights of the insured under the terms of the contract of insurance then in force, and to prepare all sworn statements in proof of loss in support of Owners' claims on behalf of Owner, at no cost to Manager; and

(c)    Expend resources to return the building to pre-loss tenancy when practicable, at no cost to Manager.  This item 3.3(c) will be subject to the availability of coverage for extra expenses.  If Owner has elected to self insure this expense, the Owner's authorized spending limits will be observed.

### Section 3.5    Liability Claims

In the event of liability claims brought against Owner:

(a)    Manager agrees to cooperate with Owner in the investigation and defense of such claims, at no cost to Manager;

(b)    Manager will give notice to Owner of any liability claim presented or expected to be presented as soon as practicable, advising of the date, nature and pertinent circumstances of the event; and

(c)    if the complaint arose out of Manager's good faith performance of and within the scope of its duties to Owner and without neglect or reckless disregard of such duties, Manager will be held harmless by Owner and Owner agrees to provide a defense and indemnification for Manager.

NY #1226128 v3 [RAA 1/4/08]

In the event a liability claim is presented against Owner and Manager, Manager, as agent of Owner, may retain separate counsel.

Manager will maintain an indexing system designed to track claims, causes of loss, location of loss, and other data which may, in Manager's judgment, be pertinent to such claims. This index will be used in the formation and monitoring of a risk management program. The goal of the program will be to identify hazardous conditions in or on Owner's Property, and to permit Manager to be proactive in a loss reduction program.

### Section 3.6     Additional Insured

Manager is to be an additional insured for liability under the terms of Owner's Insurance.

### Section 3.7     Waiver of Subrogation

Manager and Owner hereby agree that a mutual waiver of subrogation exists between them and their respective insurance carriers. Manager and Owner agree to give notice to their insurers of this provision, and to use their best efforts to secure the agreement of each insurer in writing.

### Section 3.8     Hold Harmless Agreement

Owner agrees to hold Manager harmless from any loss or claim incurred which arises out of the performance of Manager's duties for Owner in good faith and without neglect or reckless disregard of such duties, and to provide for the costs, bonds, or other instruments that may be required. This duty to hold harmless and to defend Manager exists even if the claim is totally groundless.

### Section 3.9     Insurance Records

Manager agrees to procure from all contractors, vendors, tradesman or others, appropriate certificates of insurance or other evidence of insurance as may be required. These certificates and evidence will be retained in Manager's offices and provided to Owner when requested.


## ARTICLE IV

## FINANCIAL REPORTING AND RECORDKEEPING

### Section 4.1     Books of Accounts

Manager, in the conduct of its responsibilities to Owner, shall maintain adequate and separate books and records of income and expenses for the Property. Manager shall maintain such control over accounting and financial transactions as is reasonably required to protect Owner's assets from error or fraudulent activity on the part of Manager's officers or employees.

Manager shall reimburse Owner for any losses which may occur for the following reasons:

(a)     Overpayment or duplicate payment of invoices arising from malfeasance or misfeasance by Manager's personnel.

(b)     Overpayment of labor costs arising from malfeasance or misfeasance by Manager's personnel.

(c)     Illegal or improper diversion of funds by Manager's personnel.

In connection with any such reimbursement Manager shall provide Owner with the written report of its independent accountants concerning the circumstances leading to the reimbursable loss.

### Section 4.2    <u>Financial Reports</u>

The Manager shall furnish reports of business activity and transactions occurring during the prior month. These reports are to be emailed or mailed to Owner no later than twenty (20) calendar days after the end of the previous month and shall include the items listed on <u>Schedule B</u> attached hereto or otherwise in a form approved by Owner. Manager shall, after deducting Manager's fee and all other authorized expenses, hold or expend such sums as Owner may have directed and remit the balance to Owner.

### Section 4.3    <u>Supporting Documentation</u>

As additional support to the monthly financial statement, Manager, at Owner's request, shall provide copies of all bank statements and reconciliations, cash receipts and disbursements records or detailed general ledger.

### Section 4.4    <u>Annual Financial Statements and Tax Returns</u>

At the request of Owner, Manager will cooperate with Owner's independent certified accountants to furnish Owner annually, within ninety (90) days after the expiration of each twelve (12) month period (based on a calendar year) of the term of this Agreement, financial statements and federal, state and local tax returns for the Property for such twelve (12) month period, prepared by independent certified public accountants designated by Owner. The cost of financial statements and tax returns prepared by the independent certified public accountant will be paid by Owner from the Operating Account or, at Owner's option, directly by Owner.

### Section 4.5    <u>Projections</u>

In connection with the preparation of the proposed operating and capital budgets Manager shall prepare for Owner a projection of financial results of operation using a five-year term or such longer or shorten period as Owner shall specify. The projection shall be revised after the approval of the Operating and Capital Budgets to take into account changes approved by Owner.

       NY #1226128 v3 [RAA 1/4/08]

### Section 4.6    Reporting Requirements

Manager shall comply with all reporting requirements of any secured lender to Owner, of which Owner shall keep Manager apprised.

# ARTICLE V

## OWNER'S RIGHT TO AUDIT

### Section 5.1    Owner's Right To Audit

Owner reserves the right to conduct examinations and make abstracts from or copies of the books and records maintained for Owner by Manager. Owner also reserves the right to conduct its examinations without prior notice to Manager and to perform additional audit tests relating to Manager's activities concerning the Property, provided such audit tests are related to those activities performed by Manager for Owner. Such examinations and audit tests will be performed at Manager's office during normal business hours and shall be conducted at the sole expense of Owner.

Should Owner discover defects in internal bookkeeping control or errors in record keeping, Manager will correct such discrepancies immediately or implement action to correct the deficiencies in internal control and shall inform Owner in writing of the defects or errors and of the action taken to correct such defects or errors.

# ARTICLE VI

## BANK ACCOUNTS

### Section 6.1    Operating Account

The Manager shall deposit all rents and other funds collected from the operation of the Property, including any and all advanced funds, in a special account (the "Operating Account") for the Property in the name of:

$$82^{nd}\text{-}83^{rd} \text{ Street Venture}$$

Out of the Operating Account, Manager shall pay the operating expenses for the Property and any other payments relative to the Property as required by the terms of this Agreement. Manager shall maintain separate and exclusive accounts for each Property that Manager manages for Owner and for affiliates of the Owner or its general partners.

### Section 6.2    Capital Reserve Account

Owner will establish and solely control a capital reserve account for the Property in the name of 82nd-83rd Street Venture (the "Capital Reserve Account"). Manager will transfer into the Capital Reserve Account all excess funds not required for the current operations of the Property. Manager shall make recommendations concerning the maturity dates of investments in the Capital Reserve Account to meet any deferred operating or capital obligations of the Property.

### Section 6.3    Security Deposit Account

Where law or mortgage loan documents require that tenant security deposits be separately maintained, a separate account (or separate interest bearing account, if requested by Owner) will be opened by Manager at a bank approved by Owner. Manager shall maintain detailed records of all security deposits which are deposited in each account; and such records will be open for inspection by Owner.

### Section 6.4    Lockbox Accounts

Manager shall maintain active review and accounting controls for each lockbox, escrow and reserve account required at any time by any secured lender to Owner.

## ARTICLE VII

## PAYMENT OF EXPENSES

### Section 7.1    Manager's Costs To Be Reimbursed

The following costs shall be paid for initially by the Manager. After payment by Manager, Manager shall be reimbursed out of the Operating Account.

(a)    Cost of printed forms and supplies required for use at the Property or for the direct benefit of the Property; i.e., payroll checks, time cards, etc., subject to the amounts set forth in the approved operating budget.

(b)    All reasonable out-of-pocket expenses, including, but not limited to, telephone calls and out-of-town travel if such travel is undertaken at the request of Owner.

### Section 7.2    Costs Eligible For Payment From Operating Account

Without limiting other provisions of this Agreement which permit Manager to pay funds from the Operating Account, Manager shall pay the following expenses directly from the Operating Account, subject to the conditions outlined in Article II:

NY #1226128 v3 [RAA 1/4/08]

(a)    Cost to correct any violation of federal, state, and municipal laws, ordinances, regulations, and orders relative to the leasing, use, repair and maintenance of the Property, or relative to the rules, regulations, or orders of the local Board of Fire Underwriters or similar body.

(b)    Actual cost of operating and maintaining the Property and making all repairs, decorations, and alterations.

(c)    Cost incurred by Manager resulting from an Owner approved suit for the collection of rentals.

(d)    Cost of collections of delinquent rentals collected through an attorney or collection agency approved by Owner.

(e)    Cost of capital expenditures subject to the restrictions in Section 2.8.

(f)    Cost of printed checks for each bank account required by Owner.

(g)    Cost of cash registers, adding machines, and other equipment, including all electronic data processing equipment, located at the Property and used for the Property, if approved by Owner as necessary to provide management services rendered by the Manager. All such equipment shall be the property of the Owner.

(h)    Management fees payable to Manager and leasing fees or commissions payable to third parties.

(i)    The cost of financial statements and tax returns furnished by the independent certified public accountant as authorized pursuant to Section 4.4.

(j)    The cost of all postage, overnight courier and messenger service charges directly related to the Property. For postage Manager will utilize a sub-account with Pitney Bowes and provide Owner with a monthly invoice for same.

## ARTICLE VIII

### MANAGER'S COST NOT TO BE REIMBURSED

**Section 8.1    Non-Reimbursable Costs**

The following expenses or costs incurred by or on behalf of Manager in connection with the management of the Property shall be at the sole cost and expense of Manager as part of Manager's services and shall not be reimbursed by Owner.

(a)    Employment costs, office costs and general administrative and overhead expenses for Manager's office and administrative personnel.

NY #1226128 v3 [RAA 1/4/08]

(b)    Normal general accounting and reporting services performed by Manager's office personnel.

(c)    Cost of electronic data processing equipment, or any pro-rata charge thereon, which is owned by Manager and located at Manager's general accounting office.

# ARTICLE IX

## INSUFFICIENT GROSS REVENUE

### Section 9.1    Priorities

If at any time the gross revenue from the Property shall not be sufficient to pay all the bills, charges, and mortgage payment which may be incurred with respect to the Property (including all fees payable to Manager hereunder) the funds available will be paid out of the Operating Account in the following order of priority:

(a)    first, to the mortgage payment, if any;

(b)    second, to bills and charges of third parties, including Manager's reimbursable expenses; and

(c)    third, to bills and charges, if any, incurred by Manager for Manager's services provided to Owner including Manager's fees.

### Section 9.2    Statement of Unpaid Items

After Manager has paid all bills and charges based upon the ordered priorities set forth in Section 9.1, Manager shall submit to Owner a written statement of all remaining unpaid items. Owner shall provide sufficient monies within five business days to pay any unpaid items.

### Section 9.3    Segregation of Accounts

7In each instance where Manager manages several Properties for Owner, Manager shall segregate the income and expenses of each Property so that gross income from each Property will be applied only to the bills and charges from that Property.

## ARTICLE X

## COMPENSATION

### Section 10.1   Compensation for Management Services

Owner agrees to pay Manager as compensation for its management services hereunder, monthly, an amount (the "Management Fee") equal to the percentage based on actually collected monthly base rents for the Property (without adjustment for reimbursable tax, operating expense increases, late payment fees or the like), as shown in Schedule A.  The Management Fee will be paid monthly in arrears from the Operating Account as provided in Section 7.2(h) hereof, if sufficient to pay for same or by Owner if the funds in the Operating Account are not sufficient.

### Section 10.2   Payment of Compensation

Fees payable to Manager as compensation for management services under this Agreement will be paid from the Operating Account for the Property.  Additionally, in the event that any fees to which Manager is entitled under this Article X, remain unpaid more than 90 days after such fees are earned, Manager, or its designee, shall be entitled to interest at the rate of prime (as determined by Citibank, N.A.), not to exceed nine percent (9%) per annum on the balance of such unpaid fees.

## ARTICLE XI

## TERMINATION

### Section 11.1   Term and Termination

The term of this Agreement shall begin on the date specified in Article I, and shall continue through December 31, 2008.  The term shall automatically renew for additional one year terms unless either Manager or Owner elects to terminate this Agreement.

### Section 11.2   Termination By Notice

Manager or Owner may terminate this Agreement at any time, for any or no reason at any time following December 31, 2008, by delivering to the other, thirty (30) days' prior written notice of termination.  All fees payable to Manager through the effective date of termination or accrued to Manager under this Agreement will be paid to Manager on or before the effective date of termination.  Neither Manager nor Owner shall be permitted to terminate this Agreement prior to December 31, 2008, **except upon a sale or other arms' length, good faith disposition of the Property** or for cause, as hereafter defined.

Additionally, if Owner or Manager shall fail or refuse to comply with or abide by any rule, order, determination, ordinance or law of any federal, state or municipal authority

NY #1226128 v3 [RAA 1/4/08]

applicable to it, for more than seven (7) days after receipt of notice of such non-compliance, then upon giving twenty-four (24) hours' written notice given to such party at the address hereinafter set forth, the other party may terminate this Agreement.

### Section 11.3    Other Terminations By Owner

Dissolution or termination of the corporate or partnership existence of the Manager by merger, consolidation, or otherwise; or termination or suspension of Manager's real estate brokerage license, if such license is required as a condition to managing the Property; or cessation on the Manager's part to continue to do business; or failure of the Manager to properly deal with or account for funds; or bankruptcy, insolvency or assignment for the benefit of the creditors of the Manager shall effect an immediate termination of this Agreement upon notice by Owner delivered to Manager.

### Section 11.4    Final Accounting

Upon termination of this Agreement by notice or otherwise, Manager shall deliver to Owner, within fifteen (15) calendar days of notice of termination or withdrawal, the following documentation with respect to the Property:

(a)    a final accounting, reflecting the balance of income and expenses of the Property as of the date of termination or withdrawal;

(b)    any balance or monies of Owner or tenant security deposits, or both, held by Manager with respect to the Property; and

(c)    all records, contracts, leases, receipts for deposits, unpaid bills, or other papers or documents, including computer data files, which pertain to the Property.

### Section 11.5    Outstanding Contracts/Unliquidated Obligations

Upon the termination of this Agreement, upon the expiration of time or otherwise, the Owner shall assume any outstanding contract or other unliquidated obligations entered into or incurred by Manager, pursuant to the terms of this contract in connection with the management, operation, and maintenance of the Property; and shall indemnify and hold Manager harmless with respect to same, provided that any such contracts or obligations exceeding provisions of Sections 2.5, 2.7, 2.8, and 2.9 and/or continuing without a thirty (30) day cancellation provision, shall first have been approved in writing by Owner.  Upon termination Owner shall have the right, but not the obligation to assume the employment of any person directly engaged in the management, operation or maintenance of the Property other than direct employees of Manager.

### Section 11.6    Termination for Cause

Owner may terminate this Agreement at any time, upon seven (7) business days prior written notice to Manager, in the event of material default by Manager in the performance of any

of its obligations under this Agreement, which default is not cured by Manager within such seven (7) business day period.

### Section 11.7   Limitation on Liability

Except as provided in Article III or Article VI, or arising by reason of a breach of fiduciary duty, Manager shall not be liable to Owner for monetary loss, damage or injury to the Property for default by Manager in the performance of any of its obligations under this Agreement, and Owner's sole remedy for Manager's default shall be termination of this Agreement as provided in this Article XII.


# ARTICLE XII

## NOTICES AND DIRECTIONS

### Section 12.1   Notices

All notices, demands, consents, and reports provided for in this Agreement shall be in writing and shall be given to the Owner or Manager at the address set forth below, or at such other address as each may specify thereafter in writing:

> OWNER:
> 82nd-83rd Street Venture
> Thelen Reid Brown Raysman & Steiner, LLP
> 875 Third Avenue
> New York, New York 10022
> Attention: David M. Olasov, Esq.

> MANAGER:
> Armstrong Realty Management Corp.
> 148 East 46th Street
> Suite 2
> New York, NY  10017
> Attention: Mr. Mark Massey

Such notice or other communication may be mailed by recognized overnight courier or by United States registered or certified mail, return receipt requested, postage prepaid, deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the Post Office.  Such notices, demands, consents, and reports may also be delivered by hand, or by any other method or means permitted by law and providing proof of delivery.

### Section 12.2   Directions

Wherever in this Agreement or otherwise in the performance of its duties Manager requires the action, approval or direction of Owner, such action, approval or direction shall be

NY #1226128 v3 [RAA 1/4/08]

sufficient if and only if it shall have been taken by a majority in interest of the partners or members of the Owner or their respective designees. Subject to the requirements of the preceding sentence, Manager shall rely on and shall hereby be permitted to rely on any action, approval or direction given by Owner, without further investigation.

## ARTICLE XIII

### DISPUTE RESOLUTION

**Section 13.1    Mediation**

If a dispute arises out of or relating to this agreement, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Rules before resorting to arbitration, litigation, or some other dispute resolution procedure.

**Section 13.2    Arbitration**

If a dispute or controversy arising out of or relating to this agreement, or the breach thereof, is not resolved through mediation as provided in Section 14.1 above, the parties agree that the dispute or controversy shall be settled by arbitration administered by the AAA under its Commercial Arbitration Rules, complying AAA's expedited hearing procedures before a single arbitrator, with venue of the proceedings to be set at the AAA's offices in New York City, unless otherwise agreed in writing by Owner and Manager and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

## ARTICLE XIV

### INDEMNITY

**Section 14.1    Indemnity**

Owner shall, to the fullest extent permitted by applicable law, indemnify and hold harmless Manager, its affiliated companies, and its officers, directors, members, shareholders, employees, agents, representatives, assigns and successors (collectively, the "Indemnitees") and shall defend the Indemnitees (with counsel selected by Owner and reasonably acceptable to the Indemnitees) from and against all damages, claims, suits, actions, injury, loss (but not lost profits), liability, cost or expense of whatever nature (including, without limitation, court costs, and attorneys' fees) made or asserted by Minskoff Grant Realty & Management Company, its affiliates, successors and/or assigns and any person or entity that has previously managed or operated the Property for Owner, incurred or suffered by the Indemnitees and arising (or alleged to have arisen) in connection with or resulting from this Agreement or Manager's management

and/or operation of the Property. This Indemnity shall survive the expiration or earlier termination of this Agreement for a period of six (6) years.

## ARTICLE XV

## GENERAL PROVISIONS, ETC.

### Section 15.1    No Assignments

This Agreement and all rights shall not be assignable by either party hereto or assumable by any third party.

### Section 15.2    Pronouns

The pronouns used in this Agreement referred to the Manager shall be understood and construed to apply whether the Manager be an individual, co-partnership, corporation, or an individual or individuals doing business under a firm or trade name.

### Section 15.3    Amendments

Except as otherwise herein provided, any and all amendments, additions, or deletions to the Agreement shall be null and void unless made by the parties in writing. If Owner and Manager agree upon terms for compensation and fees other than as provided in Article XI, and Schedule A, Owner and Manager agree to detail the terms governing the payment of such compensation and fees in an updated Schedule A to be attached to this Agreement. A change in Manager's compensation shall become effective and Schedule A shall be amended upon written agreement between Owner and Manager. Changes in the monthly report format, forms, and support information as set forth in Schedule B are effective upon Manager's receipt of Owner's written notice detailing the changes required by Owner.

### Section 15.4    Headings

All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

### Section 15.5    Representations

Manager represents and warrants that it is fully qualified and licensed, to the extent required by all applicable law, to manage real estate, and to perform all obligations assumed by Manager hereunder. Manager covenants to maintain all such licenses in good standing and in full force and effect during the term of this Agreement.

**Section 15.6** <u>**No Partnership**</u>

Nothing in this Agreement shall constitute Manager as an association with or in partnership with or as an employee of Owner. This Agreement constitutes Manager as an independent contractor of Owner with authorization by Owner to perform the duties specified therein and act as the exclusive agent of Owner, all according to the terms, provisions, and conditions set forth herein.

**Section 15.7** <u>**Complete Agreement**</u>

This Agreement and schedules attached hereto and made a part hereof, supersede and take the place of any and all previous management agreements for the Property entered into between the parties to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

**82nd-83rd STREET VENTURE**

By: _Ira M Allen_
   Name:
   Title: _general Partner_

By: _____
   Name:
   Title:

**ARMSTRONG REALTY MANAGEMENT CORP.**

By: _____
   Name:
   Title:

NY #1226128 v3 [RAA 1/4/08]

### Section 15.6   <u>No Partnership</u>

Nothing in this Agreement shall constitute Manager as an association with or in partnership with or as an employee of Owner. This Agreement constitutes Manager as an independent contractor of Owner with authorization by Owner to perform the duties specified therein and act as the exclusive agent of Owner, all according to the terms, provisions, and conditions set forth herein.

### Section 15.7   <u>Complete Agreement</u>

This Agreement and schedules attached hereto and made a part hereof, supersede and take the place of any and all previous management agreements for the Property entered into between the parties to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

**82nd-83rd STREET VENTURE**

By: _____
    Name:
    Title:

By: *Royanne Minekoff* _____
    Name: Royanne Minskoff
    Title: General Partner, 2226 EMLP

**ARMSTRONG REALTY MANAGEMENT CORP.**

By: _____
    Name:
    Title:

NY #1226128 v3 [RAA 1/4/08]

### Section 15.6   No Partnership

Nothing in this Agreement shall constitute Manager as an association with or in partnership with or as an employee of Owner. This Agreement constitutes Manager as an independent contractor of Owner with authorization by Owner to perform the duties specified therein and act as the exclusive agent of Owner, all according to the terms, provisions, and conditions set forth herein.

### Section 15.7   Complete Agreement

This Agreement and schedules attached hereto and made a part hereof, supersede and take the place of any and all previous management agreements for the Property entered into between the parties to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

82nd-83rd STREET VENTURE

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

ARMSTRONG REALTY MANAGEMENT CORP.

By:_____
    Name: Mark Massey
    Title: President

NY #1226128 v3 [RAA 1/4/08]

**SCHEDULE "A" to the Management Agreement dated as of January 1, 2008 between 82nd-83rd Street Venture and Armstrong Realty Management Corp.**

**Management Fee**

Fee: 4.50% of actually collected base rents        Monthly Minimum: $1,500.00

**82nd-83rd STREET VENTURE**

Date: 1/8/08

By: _Sara M Allan_
Name:
Title: _general Partner_

Date:

By:
Name:
Title:

**ARMSTRONG REALTY MANAGEMENT CORP.**

Date:

By:
Name:
Title:

SCHEDULE "A" to the Management Agreement dated as of January 1, 2008 between 82nd-83rd Street Venture and Armstrong Realty Management Corp.

**Management Fee**

Fee: 4.50% of actually collected base rents          Monthly Minimum: $1,500.00

82nd-83rd STREET VENTURE

Date:_____          By:_____
                                     Name:
                                     Title:

Date: _1/13/08_____          By: _Roxanne Minskoff_____
                                     Name: Roxanne Minskoff
                                     Title: General Partner, 2220 EMLP

ARMSTRONG REALTY MANAGEMENT CORP.

Date:_____          By:_____
                                     Name:
                                     Title:

NY #1226128 v3 [RAA 1/4/08]

**SCHEDULE "A" to the Management Agreement dated as of January 1, 2008 between 82nd-83rd Street Venture and Armstrong Realty Management Corp.**

**Management Fee**

Fee:  4.50% of actually collected base rents        Monthly Minimum:  $1,500.00

82nd-83rd STREET VENTURE

Date:_____        By:_____
                                          Name:
                                          Title:

Date:_____        By:_____
                                          Name:
                                          Title:

**ARMSTRONG REALTY MANAGEMENT CORP.**

Date: _1-5-08_____        By:_____
                                          Name: Mark Massey
                                          Title: President

SCHEDULE "B" to Management Agreement dated as of January 1, 2008 between 82nd-83rd Street Venture and Armstrong Realty Management Corp.

1.    Statement of Assets and Liabilities

2.    Income Statement

3.    Monthly Status Report, which may include a report comparing actual operating results to budget and a narrative on operations issues, leasing activity, and budget variances.

4.    A/P Aged Unpaid Bills Register

5.    Delinquency/Aging Report (summarized)

6.    Commercial Rent Roll Report

Owner may obtain without additional charge any other reports that Manager's accounting and computer systems currently generate.

Copies of each of the above listed reports will be provided to each partner or member comprising Owner and, if requested or required by Owner's secured lender, to such lender. Additional copies may be provided to the Owner at direct cost to the Property.

## 82nd-83rd STREET VENTURE

Date: 1/8/08                          By: _Sina M Allen_
                                          Name:
                                          Title: _general Partner_

Date: _____                 By: _____
                                          Name:
                                          Title:

## ARMSTRONG REALTY MANAGEMENT CORP.

Date: _____                 By: _____
                                          Name:
                                          Title:

**SCHEDULE "B" to Management Agreement dated as of January 1, 2008 between 82nd-83rd Street Venture and Armstrong Realty Management Corp.**

1.  Statement of Assets and Liabilities

2.  Income Statement

3.  Monthly Status Report, which may include a report comparing actual operating results to budget and a narrative on operations issues, leasing activity, and budget variances.

4.  A/P Aged Unpaid Bills Register

5.  Delinquency/Aging Report (summarized)

6.  Commercial Rent Roll Report

Owner may obtain without additional charge any other reports that Manager's accounting and computer systems currently generate.

Copies of each of the above listed reports will be provided to each partner or member comprising Owner and, if requested or required by Owner's secured lender, to such lender. Additional copies may be provided to the Owner at direct cost to the Property.

**82nd-83rd STREET VENTURE**

Date:_____       By:_____
                                  Name:
                                  Title:

Date: 1/13/08                 By: Roxanne Minskoff
                                  Name: Roxanne Minskoff
                                  Title: General Partner, 2220 EMLP

**ARMSTRONG REALTY MANAGEMENT CORP.**

Date:_____       By:_____
                                  Name:
                                  Title:

NY #1226128 v3 [RAA 1/4/08]

**SCHEDULE "B" to Management Agreement dated as of January 1, 2008 between 82nd-83rd Street Venture and Armstrong Realty Management Corp.**

1.    Statement of Assets and Liabilities

2.    Income Statement

3.    Monthly Status Report, which may include a report comparing actual operating results to budget and a narrative on operations issues, leasing activity, and budget variances.

4.    A/P Aged Unpaid Bills Register

5.    Delinquency/Aging Report (summarized)

6.    Commercial Rent Roll Report

Owner may obtain without additional charge any other reports that Manager's accounting and computer systems currently generate.

Copies of each of the above listed reports will be provided to each partner or member comprising Owner and, if requested or required by Owner's secured lender, to such lender.  Additional copies may be provided to the Owner at direct cost to the Property.

**82nd-83rd STREET VENTURE**

Date:_____        By:_____
                                          Name:
                                          Title:

Date:_____        By:_____
                                          Name:
                                          Title:

**ARMSTRONG REALTY MANAGEMENT CORP.**

Date: *1-5-08*                 By:_____
                                          Name: *Mark Karasick*
                                          Title: *President*

NY #1226128 v3 [RAA 1/4/08]