**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SCORPIO 8283 LLC,<br><br>                              Plaintiff,<br><br>        -against-<br><br>MYCA, LLC and 2220 EQUITIES MANAGEMENT<br>LIMITED PARTNERSHIP,<br><br>                              Defendants. | :<br>:<br>:<br>:<br>:<br>: No. 08 CV 510 (CLB)<br>: **FILED BY ECF**<br>:<br>:<br>:<br>:<br>:<br>: |

## DECLARATION OF MICHAEL D. LOCKARD
## IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION
## TO DISMISS THE COMPLAINT AND IN OPPOSITION TO
## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

MICHAEL D. LOCKARD affirms under the penalties of perjury as follows:

1.      I am associated with the law firm of Akin Gump Strauss Hauer & Feld LLP,

attorneys for the defendant MYCA, LLC. As such, I am fully familiar with the facts set forth

herein and the documents attached hereto.

2.      Annexed hereto as Exhibit 1 is a true and correct copy of the Decision and Order

of Justice Richard B. Lowe, dated March 18, 2008, in *Post-Broadway et al. v. Minskoff Grant*

*Realty & Management Corporation*, Index No. 08/600217 (N.Y. Sup. Ct.) (the "Post-Broadway

Action").

3.      Annexed hereto as Exhibit 2 is a true and correct copy of the transcript of the

hearing on February 5, 2008, before Justice Richard B. Lowe III in the Post-Broadway Action.

4.      Annexed hereto as Exhibit 3 is a true and correct copy of the Order of the

Appellate Division of the Supreme Court, First Judicial Department, New York County in *Post-*

*Broadway Associates, et al. v. Minskoff Grant Realty & Management Corp.*, M-1656, Index No. 600217/08 (N.Y. App. Div. Apr. 15, 2008).

5.    Annexed hereto as Exhibit 4 are true and correct copies of a Notice of Petition and a Verified Petition, dated April 2, 2008, in *Court-Martine Associates v. Cheryl Wasserman et al.*, Index No. SP916/08 (White Plains City Ct.).  The petition is verified by Francis C. Grant III as the purported agent of Court-Martine Associates.  The petition was filed by Joshua E. Kimerling, Cuddy & Feder LLP.

6.    Annexed hereto as Exhibit 5 is a true and correct copy of an email dated April 9, 2008, from me to Joshua E. Kimerling, of Cuddy & Feder LLP, and copying Royanne Minskoff, David M. Olasov, of Thelen Reid Brown Raysman & Steiner LLP, Robb Aley Allan, Michael Breede, Alan Minskoff, Christopher Buckey, of Whiteman & Osterman LLP, and Thomas Golden, of Willkie Farr & Gallagher LLP.

7.    I declare the foregoing to be true and correct.

Dated: April 17, 2008
       New York, New York

Michael D. Lockard

# EXHIBIT 1

SCANNED 03/31/2008

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _Lowe_                                          PART _86m_

_____
Justice

Post Broadway Associates          INDEX NO. _600217 08_
       et al
                                  MOTION DATE _2/19/08_
              - v -
                                  MOTION SEQ. NO. _001_

Minskoff Grant Realty et al       MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes ☑ No

Upon the foregoing papers, it is ordered that this motion

RECEIVED
MAR 21 2008
MOTION SUPPORT
OFFICE

MOTION DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION

FILED
MAR 21 2008
NEW YORK
COUNTY CLERK'S OFFICE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _3/18/08_                         _____ J.S.C.

Check one: ☐ FINAL DISPOSITION    ☑ NON-FINAL DISPOSITION

Check if appropriate:   ☐ DO NOT POST    ☐ REFERENCE
                            MN A4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : IAS PART 56
------------------------------------------------------------------x

POST BROADWAY ASSOCIATES
a/k/a 59 SOUTH BROADWAY VENTURE,
77th QUEENS ASSOCIATES, 82nd-83rd STREET
VENTURE, HALSTEAD HARRISON AVENUE
VENTURES

                *Plaintiff*                        Index No: 600217/08

  -against-                                    **DECISION AND ORDER**

MINSKOFF GRANT REALTY &
MANAGEMENT CORP.,

                      *Defendant.*

------------------------------------------------------------------x

**RICHARD B. LOWE III, J:**

      This dispute arises out of the purported termination of Defendant as managing and leasing

agent of certain properties by Plaintiffs.  In the Complaint, Plaintiffs seek, among other things,

declaratory relief that Plaintiff has terminated its principal-agency relationship with Defendant.

Plaintiff now moves pursuant to CPLR 6301 and 6311 to restrain Defendant from taking action

on behalf of Plaintiffs, among other things.[1]

FILED

MAR 2 1 2008

NEW YORK
COUNTY CLERK'S OFFICE

                          **BACKGROUND**

*The Partnerships*

      Plaintiffs Post Broadway Associates ("Broadway"), 77th Queens Associates ("77th

Queens"), 82nd-83rd Street Venture ("82nd-83rd"), and Halstead Harrison Avenue Ventures

("Halstead") are New York partnerships (collectively referred to as the "Partnerships").  Each

---

[1]A Consent Order, dated February 5, 2008, resolved Plaintiffs' application for preliminary
injunctive relief with respect to Post Broadway Associates a/k/a 59 South Broadway Venture.

partnership owns or leases property (the "Properties") rented to various tenants.

*The Managing Agent*

Minskoff Grant Realty & Management Corp. ("Minskoff") has acted as the managing and exclusive leasing agent for each of the Properties pursuant to agreements between Minskoff and the Partnerships. Minskoff negotiated leases for space on the Properties, billed tenants for rents due on leases, received payment of rents from tenants, held money in a bank account over which Minskoff had the power to disburse funds, and was responsible for the operation and maintenance of the Properties and the payment of related bills.

Jean Minskoff Grant ("Grant") is the Chief Operating Officer ("COO") of Minskoff. However, in addition to being the COO of Minskoff, Grant holds interests in two of the Partnerships. Grant owns a direct partnership interest in Halstead and an indirect partnership interest in 77th Queens.

*The Purported Termination*

At a meeting held after notice was given to all partners, the holders of the majority interest in each of the Partnerships determined that (1) effective January 1, 2008, each partnership would hire Armstrong Realty Management Corp. ("Armstrong") to manage the Properties owned or leased by the Partnerships; and (2) that the Partnerships would instruct Minskoff to (a) cease, effective immediately, all leasing activities for the Properties, and (deliver to Armstrong all partnership assets, keys, records and documents concerning the Properties. The Partnerships thereafter revoked any agency agreement between a partnership and Minskoff.

*The Continuing Representation*

Minskoff refused to recognize that its agency had terminated and the Partnerships no

2

longer wished to have Minskoff act as managing or leasing agent for, or to take action with respect to, any of the Properties.

In response to a letter from the Partnerships, Minskoff stated that because a principal of Minskoff, Grant, was also a partner in two of the Partnerships and held a minority interest in such entities, Minskoff would continue to act as managing and leasing agent for the three properties owned by a partnership in which she held an interest.

Minskoff has not ceased its activities with respect to the Properties. Minskoff continues to act as leasing agent, collect rents from tenants, and exercise control over the bank accounts of the Partnerships.

Plaintiffs assert that the actions of Minskoff have prevented Armstrong from managing the Properties. The required documents and property have not been turned over to the Partnerships or Armstrong. Thus, Plaintiffs argue, Armstrong does not have access to the books and records that it needs to manage the Properties.

In their Complaint, Plaintiffs assert causes of action for declaratory and injunctive relief (first cause of action), and for conversion and replevin (second cause of action). Plaintiffs now move pursuant to CPLR 6301 and 6311 for an order restraining Minskoff (1) from taking any action on behalf of any plaintiff or holding itself out as the managing or leasing agent with respect to any of the Properties; (2) from taking any action to destroy or otherwise transfer any of the books, records, documentation, keys, and other property concerning any of the Properties; and (3) to turn over the aforementioned items.

## DISCUSSION

*Motion for Preliminary Injunction*

3

*Likelihood of Success on the Merits*

The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]).

Here, Plaintiffs seek declaratory relief that any agency relationship between a partnership and Minskoff has terminated (Banks Affirmation Ex 1 ¶27, 28).

"It is well settled that. . . a principal has the power to revoke at any time his agent's authority to represent him" (*Wilson Sullivan Co. v International Paper Makers Realty Corp.*, 307 NY 20 [1954]).

Generally, Plaintiffs allege that each of the four partnerships terminated its principal-agent relationship with Minskoff; that Minskoff refuses to recognize the termination, continues to take actions with respect to the properties, fails to provide Plaintiffs with books and records necessary for the new managing and leasing agent to perform its duties (See Banks Affirmation Ex 1 ¶ 2).

The Complaint alleges that the majority interest holders in each of the Partnerships determined that each would hire Armstrong to manage the Properties (Banks Affirmation Ex 1 ¶ 18; Ex A); each of the Partnerships then revoked the agency agreement with Minskoff (Banks Affirmation Ex 1 ¶ 19), each of the Partnerships wrote to Minskoff advising Minskoff that its authority as managing and leasing agent had terminated (Banks Affirmation Ex 1 ¶ 21; Ex C).

Minskoff argues that New York Partnership law prevents partners from imposing a management company on the partnership over the objection of other partners (Mem in Opp at 13). Minskoff cites *Krulwich v Posner* for the general proposition that "the law bestows on each

4

partner the 'right to participate in the management' of the partnership" (291 AD2d 301, 303 [1st Dept 2002], citing Partnership Law § 50(c)).

Additionally, Minskoff cites *Northmon Inv. Co. v Milford Plaza Assocs.*, in which the Appellate Division held that a partner's authority to bind the partnership to transactions apparently in the ordinary course of the partnership's business does not affect the right of partners as between themselves to prevent contemplated transactions with third parties, or otherwise to assert their "equal rights in the management and conduct of the partnership business" (284 AD2d 250, 251 [1st Dept 2001] [the binding partners lacked authority to enter into a 99 year lease of real property]). Expressing a partner's rights in stronger terms, the court stated that a partner's right "to interfere with [an extant] contract or prospective contract involving the partnership is 'absolute' and 'privileged, excusable and justified'" (*id.*).

However, Minskoff attempts to argue that the proposition - "that it is deemed contrary to public policy for a principal to have an agent forced upon [it] against [its] will" - supports Minskoff's argument that Grant should not be imposed with having Armstrong as the managing agent over her objections (*see Smith v Conway*, 198 Misc. 886 [Supt Ct, New York County 1950]). However, the distinction here is that Grant is not the principal with respect to Armstrong, the managing agent. Rather, each of the Partnerships is the principal in relation to Armstrong. Thus, Grant stands outside the principal-agent relationship in *Smith* because Grant is merely a partner of a partnership, which, in turn, is a principal of the managing agent *(see cf G.K. Alan Assoc., Inc. v Lazzari*, 2007 NY Slip Op 6019, *5 [2d Dept 2007] ["A corporation and its shareholder are separate legal persons. Therefore, the agent of a corporate principal is not, merely by virtue of the agency relationship with the corporation, an agent of a shareholder of the

corporate principal."]).

Moreover, the proposition cited in *Smith* is inapposite because the Partnerships, by majority vote, seek to install Armstrong as the managing agent instead of opposing it. Indeed, if the Court were to reverse Minskoff's argument upon Minskoff, this Court would be compelled to prevent Grant from forcing a management company, namely Minskoff, on the Partnerships against the will of the majority in interest. Accordingly, even if the proposition in *Smith* were to apply, the proposition would apply to the Partnerships, not Grant, vis-a-vis Armstrong.

New York Partnership Law § 40(8) states that "any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement." In *Bishop v Rubin*, the court held that the "majority of the partnership had every right to remove its managing agent for cause, which included assertions of precipitous decline in rental income, overcharges and selective failures to charge certain tenants, overcharging the partnership for management fees and personal expenses, and conflicts of interest, *inter alia*" (228 AD2d 222, 224 [1st Dept 1996] [citing NY Partnership Law ¶¶ 40(5) and 40(8)). Further, the court explained that the minority partner "could lay claim to no more than its nominal 35% interest, which would have been insufficient to block a removal resolution by majority vote" (*id.*). Thus, Section 40(8) resolves the apparent stalemate, resulting from the differences between Plaintiffs and Minskoff, in favor of the majority in interest (*see id.*).

Accordingly, based on Plaintiffs' allegations and supporting papers, this Court finds that Plaintiffs sufficiently demonstrate a likelihood of success on the merits with respect to its claim for declaratory relief.

*Irreparable Harm*

6

Plaintiffs argue that they will face irreparable injury without injunctive relief because if Minskoff continues to hold itself out as the managing and leasing agent for the partnerships, Minskoff may bind the partnerships with long term leases that the partnerships object to. Additionally, relationships with tenants may suffer if tenants are uncertain as to the identity of the actual managing and leasing agent

Minskoff argues that Plaintiffs' grounds for irreparable harm are speculative and conclusory, and, therefore, insufficient to satisfy this prong for a preliminary injunction (*but see American Home Assur. Co. v Starr Tech. Risks Agency, Inc.*, 2006 NY Slip Op 50169U, *5 [Sup Ct, New York County 2006 Cahn, J.] [holding that the possible harm to reputation satisfies the prong of irreparable harm]).

Irreparable harm exists where an award for monetary damages is not adequate compensation (*see Credit Agricole Indosuez v Rossiyskiy Kredit Bank*, 94 NY2d 541, 544-45 [2000]; *Credit Index, L.L.C. v Riskwise Intl., L.L.C.*, 282 AD2d 246, 247 [1st Dept 2001]; *SportsChannel Am. Assocs. v National Hockey League*, 186 AD2d 417, 418 [1st Dept 1982]).

Here, in the absence of injunctive relief, irreparable harm may result because Plaintiffs show that it will lose managing and leasing control over its Properties pending trial (*see Suchodolski Assocs. v Cardell Fin. Corp.*, 2003 U.S. Dist. LEXIS 24933, *12-13 [SDNY 2003] ["The dilution of a party's stake in, or a party's loss of control of, a business constitutes irreparable harm."]). With management and leasing control over the Properties Minskoff could bind the Partnerships to undesirable arrangements, including leases with extended terms, low rental rates and/or other unfavorable terms. In addition, continued management by an unauthorized and terminated agent threatens injury to the goodwill and reputation associated with

7

the Properties.

Accordingly, the Court finds that Plaintiffs sufficiently demonstrate irreparable harm.

*Balance of the Equities*

Lastly, Plaintiffs argue that a balance of the equities weighs in its favor because a terminated agent does not suffer much harm as a result of an injunction.

Minskoff argues that Plaintiffs breached their duty of candor to their fellow partners with respect to the retention of Armstrong, that Plaintiffs have made no claims that Minskoff has performed deficiently, and that a change in property management would be disruptive in connection with certain dissolution proceedings. The Court finds these arguments contradicted by the record, unavailing and without basis in law, respectively.

In *American Home*, the petitioner sought an injunction barring the respondent from entering into a reinsurance agreement on petitioner's behalf (2006 NY Slip Op at *5-6). The court held that, under the circumstances of the case, the respondent opposing injunctive relief would not suffer as much harm from injunctive relief as the petitioner would suffer from the absence of the same (*id.*). While the respondent could have continued to represent other reinsurers even if injunctive relief was granted, the petitioner would be bound by its agent's actions in the absence of injunctive relief (*id.*). Similarly, granting relief in favor of Plaintiffs here would cause less harm to Minskoff than to Plaintiffs.

Here, Plaintiffs demonstrate a likelihood of success on its claim that the activities of Minskoff were in violation of the Partnerships' determinations to terminate the agency relationship with Minskoff. Plaintiffs also demonstrate irreparable harm in the absence of injunctive relief if Minskoff continues to have managing and leasing control.

8

Accordingly, in view of the reasoning above, Plaintiffs' likelihood of success on its claim for declaratory relief and the irreparable harm that would result absent injunctive relief, the Court finds that the balance of equities tips sufficiently in Plaintiffs' favor as to warrant an injunction pending an adjudication of its claims.

## CONCLUSION

Therefore, based on the foregoing it is hereby

ORDERED that the undertaking is fixed in the sum of $ 20,000.00 conditioned that the Plaintiffs, if it is finally determined that it was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of this injunction; and it is further

ORDERED that Defendant Minskoff Grant Realty & Management Corp., its agents, servants, employees and all other persons acting under the jurisdiction, supervision and/or direction of Defendant, are enjoined and restrained, during the pendency of this action, from doing or suffering to be done, directly or through any attorney, agent, servant, employee or other person under the supervision or control of Defendant or otherwise, any of the following acts: (A) from taking any action on behalf of any Plaintiff (77th Queens Associates, 82nd-83rd Street Venture, Halstead Harrison Avenue Ventures) or with respect to any property owned by a Plaintiff (116-02/32 Queens Boulevard, Forest Hills, New York; 39-55 Court Street/167-183 Martine Avenue, White Plains, New York; and 270-78 Halstead Avenue, Harrison, New York) or holding itself out as the leasing or managing agent with respect to any of these properties pending the Court's determination of the claim by Plaintiffs for a Declaratory Judgment that the agency relationship between each plaintiff and Defendant has terminated and that Defendant may

9

no longer act or hold itself out as the managing or leasing agent of the property owned by a Plaintiff; (B) from taking any action to destroy or otherwise transfer any of the books, records, documentation, keys, and other property concerning 116-02/32 Queens Boulevard, Forest Hills, New York; 39-55 Court Street/167-183 Martine Avenue, White Plains, New York; and 270-78 Halstead Avenue, Harrison, New York set forth on Exhibit D attached to the Verified Complaint that is in the possession, custody or control of Defendant, its officers, directors, agents or employees; and (C) to turn over said items to Plaintiffs so that each Plaintiff can effectively manage the property it owns or leases.

Dated: March 18, 2008

ENTER:

_____
                    J.S.C.

FILED

MAR 2 1 2008

NEW YORK
COUNTY CLERK'S OFFICE

10

# EXHIBIT 2

1

```
 1
 2    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK : CIVIL TERM : PART 56
 3    ---------------------------------------x
      POST BROADWAY ASSOCIATES a/k/a 59 SOUTH
 4    BROADWAY VENTURE, 77TH QUEENS ASSOCIATES,
      82ND-83RD STREET VENTURE, HALSTEAD HARRISON
 5    AVENUE VENTURES,

 6                                 Plaintiffs,
                                        Index No.
 7            -against-                 600217/08

 8    MINSKOFF GRANT REALTY & MANAGEMENT CORP.,

 9                                 Defendant.
      ---------------------------------------x
10                                 February 5, 2008
                                   60 Centre Street
11                                 New York, NY  10007
      B e f o r e:
12

13       HON. RICHARD B. LOWE, III, Justice.

14
      A p p e a r a n c e s:
15

16       FULBRIGHT & JAWORSKI, LLP
         Attorneys for Plaintiffs
17            666 Fifth Avenue
              New York, New York  10103
18       BY:  ROBERT D. OWEN, ESQ., and
              GLEN BANKS, ESQ.
19

20       WILLKIE, FARR & GALLAGHER, LLP
         Attorneys for Defendant
21            787 Seventh Avenue
              New York, New York  10019
22       BY:  THOMAS H. GOLDEN, ESQ.

23
         DAVID J. MINDER, ESQ.
24       Attorneys for Sterling National Bank

25                    MINUTES OF PROCEEDINGS
26
                           Reported By:
27                         William L. Kutsch
                           Senior Court Reporter
```

2

```
1                          Proceedings
2              MR. OWEN:  Good morning, your Honor.
3              Robert Owen from Fulbright & Jaworski,
4    attorneys for the four partnership plaintiffs.
5              This is a motion brought on by order to
6    show cause for a preliminary injunction.  The
7    injunction would order the defendant Minskoff-Grant
8    Realty Management Corporation to heed the instructions
9    of the majorities in the four partnerships I
10   represent, to cease holding itself out as managing
11   agent for the properties owned by the partnerships,
12   and to turn over the records.
13             There is no dispute, your Honor, that
14   duly-noticed meetings of the partnerships were held in
15   November.
16             There's also no dispute that instructions
17   were given by a vote of the majorities of each of the
18   partners to Minskoff-Grant to cease acting as managing
19   agent and to turn over the records and the accounts
20   and the keys to the partnership who wished to retain a
21   new managing agent.  The votes were held, the demand
22   was held.  For three months now, we have been waiting
23   for compliance with the votes of the majorities.
24             The defendant in his papers raises issues
25   of intrafamily rivalries.  I submit to your Honor
26   though they are irrelevant.
```

1                            Proceedings

2          The defendant raises an issue of other

3      actions pending by virtue of five dissolution actions

4      that were filed days before this one in Westchester.

5      However, we debated whether to go into those actions.

6      The partnerships I represent are not parties to the

7      actions in Westchester.  One of the -- Minskoff-Grant

8      is agent to all four of the partnerships, but the

9      principal of Minskoff-Grant, who is a member of the

10     family, is involved in only two of the actions in

11     Westchester.  The identities of the parties aren't

12     identical, the issues aren't identical.  We would have

13     had to intervene.  The three matters in which

14     partnerships that I represent are in dissolution in

15     Westchester are in Federal Court.

16          We felt that the cleanest thing, your

17     Honor, was to come to this court to seek an

18     enforcement of the orders that the partnership

19     majorities had issued.

20          As a matter of law, the cases hold that

21     partnerships have the right as a matter of law to

22     terminate managing agents.  I think likelihood of

23     success on the merits is established.

24          Their other action pending argument, your

25     Honor, I think I've dealt with.

26          Irreparable injury.  The cases hold in the

4

1                  Proceedings

2    First Department in Virsa (phonetic) versus Rudin says

3    that a majority has the right to have its properties

4    managed by an agent of its choice.  And the

5    continuation of the managing agent in the position of

6    managing agent is irreparable injury.  There's tenant

7    confusion.  They're sending out rent bills for

8    February despite the fact they have been notified that

9    the new managing agent has been hired.

10              Balance of hardships.  The cases say,

11   American Home Assurance in New York County, the case

12   held that the balance of hardships in a case exactly

13   like this is decidedly in the plaintiff's favor.  The

14   defendant company can go on and do its business for

15   other companies, but if we're forced to continue using

16   the defendant as managing agent, we have lost control

17   of our properties.  They could enter into leases with

18   tenants because they have apparent authority to do so,

19   the tenants may be inappropriate, the lease terms may

20   be inappropriate.

21              We're here, your Honor, because there has

22   been three months of foot-dragging, and we need the

23   Court's relief.

24              I have a reply brief.  It cites to a First

25   Department case decided in 1990 but --

26              THE COURT:  Excuse me.  Did you move by way

5

```
 1                        Proceedings
 2    of Order to Show Cause?
 3                   MR. OWEN:  I did, sir.
 4                   THE COURT:  You're not entitled to a reply
 5    brief.
 6                   Let me hear from you please.
 7                   MR. GOLDEN:  Thank you, your Honor.
 8                   May it please the Court, Thomas Golden from
 9    Willkie, Farr & Gallagher.  I represent the defendant
10    Minskoff-Grant Realty Management Corporation.
11                   Your Honor, I think this dispute is
12    properly characterized not as a dispute between a
13    partnership speaking with one voice and an outside
14    manager, but rather a dispute among partnerships which
15    are in dissolution as to how the partnerships should
16    be run pending dissolution.
17                   Now, for years the agreement among all the
18    partners was that Minskoff-Grant would manage the
19    day-to-day affairs of the properties owned by the
20    partnerships.
21                   Not three months ago, but a
22    month-and-a-half ago, certain partners purported to
23    fire Minskoff-Grant.
24                   THE COURT:  Do they have that right?
25                   MR. GOLDEN:  They did not, your Honor.
26                   THE COURT:  Why?
```

6

1                           Proceedings

2                MR. GOLDEN:  There is a reason.  For two

3      reasons.

4                First, the Partnership Law makes clear that

5      every partner has a right to participate in the

6      affairs of the partnership's business.  And so in

7      effect by one faction of the partners saying

8      Minskoff-Grant cannot --

9                THE COURT:  Wait a second.  If you have a

10     partnership, how many members of this partnership were

11     there?

12                MR. GOLDEN:  Essentially four, your Honor.

13                THE COURT:  Okay.  So --

14                MR. GOLDEN:  Four different --

15                THE COURT:  Please.

16                So initially the four partners agreed to

17     the agency of Minskoff; is that correct?

18                MR. GOLDEN:  Correct.

19                THE COURT:  Okay.  Now, if the partnership

20     meets and votes to terminate that relationship and

21     hire a new managing agent, do they have the right to

22     do that?

23                MR. GOLDEN:  Your Honor, I would submit

24     they would not, because the Partnership Law Section

25     40, Subsection 8, while it says that any differences

26     among the partners as to ordinary matters connected

7

1

2    with the partnership business shall be decided by

3    majority vote, in effect, I would submit firing

4    Minskoff-Grant and commencing this litigation is not

5    an ordinary matter, so the majority rule --

6              THE COURT:  What is an ordinary matter?

7              MR. GOLDEN:  I would think it would be,

8    your Honor, extending the time for payment of rent for

9    instance, or painting a sign, that sort of day-to-day

10   stuff.

11             You know, but there's an additional

12   provision of Partnership Law that is relevant here

13   which says, again this is Section 40, Subsection 8, No

14   act in contravention of any agreement between the

15   partners may be done rightfully without the consent of

16   all the partners.

17             Again, for many years, your Honor, the

18   agreement among all partners was that Minskoff-Grant

19   would manage the day-to-day affairs of the

20   partnership.

21             At a partnership meeting in November,

22   certain partners decided they wanted to fire

23   Minskoff-Grant.  Another partner, Mr. Breedy

24   (phonetic), who is not affiliated in any ownership

25   manner with Minskoff-Grant, objected to that, was

26   given assurances that the partnerships would not sign

8

| | |
|---|---|
| 1 | Proceedings |
| 2 | any agreement with Armstrong, the new manager, until |
| 3 | and before a draft agreement was disseminated for |
| 4 | partner review. |
| 5 | The next thing that happened is that we are |
| 6 | told that Armstrong was hired. |
| 7 | And so, your Honor, I respectfully submit |
| 8 | that in this case, where there has been an agreement |
| 9 | for many years regarding how the properties are run, a |
| 10 | decision to abrogate that agreement requires the |
| 11 | consent of all the partners. |
| 12 | Now, your Honor, I understand that we're |
| 13 | now in a situation where there is not going to be |
| 14 | consent of all the partners.  In effect, we have two |
| 15 | camps.  And that is why the partnerships are the |
| 16 | subject of dissolution proceedings.  It is clear that |
| 17 | these partners cannot get along. |
| 18 | And to the extent the partners want to |
| 19 | argue among themselves, present to the Court how the |
| 20 | partnerships should be run pending dissolution, I |
| 21 | think that is -- that should be raised in a forum in |
| 22 | which all of the partners themselves are parties, that |
| 23 | the partners can speak for themselves, the partners |
| 24 | pay their own fees, as opposed to having fees being |
| 25 | incurred for the benefit of certain partners imposed |
| 26 | on the partnership as a whole. |

1                          Proceedings

2          And, your Honor, I would be happy to move

3     on to the other aspects of the test for injunctive

4     relief if your Honor would like to hear those.

5          I think, clearly, there has been no showing

6     of irreparable injury.  Mr. Owen has cited to the case

7     <u>Bishop v. Rubin</u>, 228 Appellate Division 222, that is

8     First Department, 1996.  And Mr. Owen reads that case

9     as holding that there is almost a presumption of

10    irreparable injury when a principal is forced to

11    continue with an agent.  Again, I submit that that is

12    not what the Bishop v. Rubin held.

13          To the contrary, in that case, the record

14    contained evidence of misconduct and mismanagement by

15    the agent.  The court said, The record contains ample

16    evidence of irreparable injury.

17          Here by contrast, there was nothing in the

18    record to suggest that Minskoff-Grant has mismanaged

19    the properties or that there will be any other

20    irreparable injury to the partnership.

21          Finally, your Honor, with respect to the

22    balance of the equities, again these partnerships are

23    the subject of dissolution proceedings.  The parties

24    have for some time been discussing this notion of a

25    global resolution in which the different factions of

26    partners would realign, in effect divide up the

```
1                     Proceedings
2    properties among them in some equitable fashion, so
3    that partners who cannot get along will no longer be
4    in business.  And it is our hope and desire that we
5    can cause that sort of realignment to happen very
6    quickly and as efficiently as possible.
7                     And our view is, your Honor --
8                     THE COURT:  I'm a little confused.
9                     You said that in the federal action there's
10   a pending dissolution proceeding?
11                    MR. GOLDEN:  Correct, your Honor.
12                    THE COURT:  They are not party to it?
13                    MR. GOLDEN:  I think the partnership itself
14   is not a -- should not be a party to a dissolution
15   action, but rather you sue your partners for
16   dissolution of the partnership.  That's what we have
17   done.
18                    THE COURT:  Have you sued them?
19                    MR. GOLDEN:  I have sued the partners who
20   are behind the actions here.  I have sued -- the
21   partners who are making the decisions purportedly for
22   the partnership are defendants in the other action.
23                    THE COURT:  Then how do you say that you
24   are not a party?
25                    MR. OWEN:  The partnerships are not parties
26   to those actions in Westchester County, your Honor.
```

11

```
1                           Proceedings
2       Just the individuals are.  I'm here representing the
3       partnerships.  And the cases say that the partnerships
4       have to bring actions like this.
5                      THE COURT:  Respond to the assertion that
6       -- how did you term it?
7                      MR. GOLDEN:  I'm sorry, your Honor?
8                      THE COURT:  Significant issues or what?
9                      MR. GOLDEN:  The Partnership Law says that
10      differences as to ordinary matters may be decided by
11      majority vote, but that no act in contravention of an
12      agreement between the partners may be done without
13      consent of all the partners.
14                     MR. OWEN:  First of all, your Honor, there
15      is nothing in these partnership agreements that
16      provides for the appointment of a managing agent.  So
17      really it's a question of majority rules or not.
18      There are no cases that hold that the termination of a
19      managing agent is not an ordinary matter.  It is.  The
20      cases are familiar territory with the termination of a
21      managing agent.  We have cited several of them that
22      the First Department has decided.
23                     An extraordinary matter that would require
24      the consent of all of the partners would be something
25      along the lines of selling the property or terminating
26      the partnership.  Hiring a managing agent is,
```

12

Proceedings

 1  generally speaking, considered to be an ordinary

 2  matter, and the question is, does the majority of the

 3  partnership rule or doesn't it.

 4  

 5          The position that Mr. Golden is arguing for

 6  suggests that a minority partner, who happens to be a

 7  principal of the managing agent, could block the

 8  wishes of the majority.  And, in fact, that is what

 9  she is seeking to do.

10          We -- I will say that there have been

11  disagreements over management for years, but in an

12  effort to get along, the partners who comprise the

13  majority attempted to work with her and so forth.  It

14  reached a tipping point later in 2007.  The votes were

15  taken, the instructions were given, and we are here to

16  enforce it.

17          The management agreements that Miss

18  Minskoff-Grant was operating under had been signed by

19  herself and other members of the partnership, and we

20  didn't even get copies of those management agreements

21  until late last year, despite numerous demands.

22          So it's a question of disclosure.  The

23  parties don't trust themselves anymore.

24          I will point out that Mr. Golden doesn't

25  make any argument as to one of the four partnerships

26  because the majorities who comprise -- the partners

13

1        Proceedings

2    who comprise the majorities in the other three own a

3    hundred percent of Post Broadway.  In fact, he has

4    agreed to an order as to that one.

5            But the question before the Court is, does

6    the majority of the partners in the remaining three

7    partnerships have to continue with Miss Minskoff-Grant

8    in control of the partnerships and the properties, or

9    can they have their will effected.

10           THE COURT:  Just clarify this for me.

11           The managing agent, is the managing agent a

12   partner?

13           MR. OWEN:  No.  No.  The managing agent is

14   a company, and the principal of that company is a --

15   holds partnership interests in two of the four

16   partnerships.  Not all four, only in two, through

17   trusts and so forth.

18           So in terms of the identity of the parties,

19   there just isn't any --

20           THE COURT:  What I'm a little confused

21   about is the dissolution action that is pending.  The

22   partnership, your partnership, is not a party to that

23   action but the individual partners are?

24           MR. OWEN:  Yes.  And I believe that is

25   customary.

26           THE COURT:  Okay.  Now, what happens to the

14

1          Proceedings

2    partnership if the individual partners, or in that

3    dissolution action, it does, in fact, result in a

4    dissolution, how does that affect the partnership

5    here?

6              MR. OWEN:  Well, it affects the partnership

7    during the time between today and whenever those

8    actions are resolved in Westchester, which I submit

9    could be a long time.  That is really the issue.

10             The partnership, if the partnership is

11   dissolved, then of course its right to choose a

12   managing agent becomes academic.  But that's not going

13   to happen immediately.

14             THE COURT:  But the question that is posed

15   to me is -- that I have, is why not proceed as is

16   until the dissolution is achieved?

17             MR. OWEN:  The majorities in these four

18   partnerships have tried to do that over the years.

19   They brought this to a head.  They didn't make an

20   issue with the other six or eight partnerships that

21   they also are members of with Jean Minskoff-Grant.

22   They just said Okay, we are the majority in these

23   four, let us run these four, we will talk about

24   dissolving all of the relationships and rationalizing

25   all of the issues, but let us run these four.  We

26   comprise the majorities.  We want the bank accounts.

1                    Proceedings

2     We want to run the properties the way we want to.   And

3     I just don't see how the Partnership Law gives the

4     minority partner a right to block that, even for six

5     to eight to ten months or whatever time it takes in

6     the Federal Court to achieve dissolution.

7                    THE COURT:  All right.  Let me review this.

8     I will take it under submission.

9                    MR. OWEN:  May I submit a copy of the

10    Margolis case, your Honor?  It is a case that we did

11    not cite in our main brief.  It's a First Department

12    case right on point.

13                    THE COURT:  Have you supplied it to your

14    adversary?

15                    MR. GOLDEN:  He did, your Honor.  Thank

16    you.

17                    MR. MINDER:  Your Honor, may I be heard for

18    a moment?

19                    THE COURT:  You are?

20                    MR. MINDER:  My name is David Minder.  I'm

21    an attorney for Sterling National Bank where the

22    partnerships maintain their accounts.

23                    We are in the middle of this.  We take no

24    position regarding the merits, but we have conflicting

25    directions with respect to the accounts from the

26    existing managing agent and the proposed new managing

16

1                           Proceedings

2      agent appointed by the majority of the partners.

3              We would like some direction as to the

4      continuance of authority with respect to those

5      accounts so we do not get subject to lawsuits by

6      either party.

7              At this time, we have the old managing

8      agent handling the account, except for one account

9      which both parties agreed the managing agent can be

10     changed.

11             But as to the three remaining partnerships

12     we have been given documentation from the new managing

13     agent and they have demanded control of those

14     accounts.

15             So we are in the middle and we would

16     appreciate direction because those accounts I assume

17     need to be controlled with respect to the continuing

18     management of the properties, and we need direction as

19     to who we should be abided by for authority on those

20     accounts.

21             MR. OWEN:  May I speak to that, your Honor?

22             First of all, with respect to Post

23     Broadway, I have a proposed order that Mr. Golden has

24     agreed to.  It resolves Mr. Minder's issue with

25     respect to one of the four partnerships.

26             With respect to the other three, I'm

17

1          Proceedings

2    assuming the Court will come to a decision reasonably

3    quickly, and we will abide by the Court's decision

4    having put it in your Honor's hands.

5                THE COURT:  Okay.

6                (At this time the proceedings were

7    concluded.)

8                     -oOo-

9  C E R T I F I C A T I O N

10               This is to certify the within is a true and

11   accurate transcript of the proceedings as reported by

12   me.

13

14

15

16   _____

17   William L. Kutsch, SCR

18

19

20

21

22

23

24

25

26

# EXHIBIT 3

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on April 15, 2008.

Present - Hon. Peter Tom,                    Justice Presiding,
          Angela M. Mazzarelli
          Milton L. Williams
          John W. Sweeny, Jr.,               Justices.

-----------------------------------------x
Post Broadway Associates, also known
as 59 South Broadway Venture, et al.,

    Plaintiffs-Respondents,

     -against-                              M-1656
                                            Index No. 600217/08
Minskoff Grant Realty & Management
Corp.,

    Defendant-Appellant.
-----------------------------------------x


An appeal having been taken to this Court from the order of
the Supreme Court, New York County, entered on or about March 21,
2008,

And defendant-appellant having moved for a stay of the order
pending hearing and determination of the aforesaid appeal,

Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon,

It is ordered that the motion is denied, and the interim
relief granted by an order of a Justice of this Court dated
March 25, 2008, is vacated.

ENTER:

Clerk

# EXHIBIT 4



CITY COURT OF THE CITY OF WHITE PLAINS
COUNTY OF WESTCHESTER: STATE OF NEW YORK
----------------------------------------------------------x
COURT-MARTINE ASSOCIATES,

                        Petitioner-Landlord,

        -against-                                          **NOTICE OF PETITION**
                                                          (HOLDOVER)
CHERYL WASSERMAN
173 Martine Avenue                                        Index No $P 9/6/08$
street level & basement underneath
White Plains, New York 10601, in the building
known as 167-183 Martine Avenue and 39-55
Court Street, White Plains, New York 10601,

                        Respondent-Tenant,

        -and-

"JOHN DOE" and "JANE DOE",

                   Respondents/Undertenants.

the names of the undertenants being fictitious
and unknown to Petitioner, the persons intended
being in possession of the Premises hereinabove
described.
----------------------------------------------------------X

        To the Respondents above-named and described, in possession of the Premises

hereinafter described or claiming possession thereof:

        **PLEASE TAKE NOTICE**, that a hearing at which you must appear will be held at

the White Plains City Court, located at 77 South Lexington Avenue, White Plains, New

York 10601, on the **10th day of April, 2008**, at 9:30 A.M., on the annexed Verified

Petition of Court-Martine Associates ("Landlord" or "Petitioner"), verified on the 2nd day

of April, 2008, which prays for, inter alia, a Final Judgment of Possession and Warrant

of Eviction, awarding to Petitioner the possession of the Premises designated and

described as follows: street level commercial premises and basement space

underneath in the premises known as 173 Martine Avenue, White Plains, New York

C&F; 808257.1



10601 (the "Premises"), in the building known as 167-183 Martine Avenue and 39-55

Court Street, White Plains, New York 10601. as depicted in the lease plan annexed to

the Verified Petition annexed hereto and incorporated herein, and further granting to the

Petitioner such other and further relief as is demanded in the Verified Petition annexed

hereto.

      **PLEASE TAKE NOTICE**, that demand is made in the Petition for a monetary

judgment against Tenant Cheryl Wasserman for use and occupancy fees owed to

Petitioner for the holdover period of April 1, 2008 through and including the date

Petitioner obtains possession of the Premises, together with costs, expenses and legal

fees.

      **PLEASE TAKE NOTICE**, that your answer may set forth any defense you may

have against the Petitioner.

      **PLEASE TAKE NOTICE**, that if you fail at such time to interpose and establish

any defense that you may have to the allegations of the Petition, you may be precluded

from asserting such defense or the claim on which it is based in any other proceeding or

action.

      **PLEASE TAKE NOTICE**, that your answer may be made at the time of the

hearing specified above unless this Notice of Petition is served upon you on or before

the 2nd day of April, 2008, in which event you must answer at least three (3) days before

the Petition is noticed to be heard, either orally before the Clerk of the Court at his or

her office or in writing by serving a copy thereof upon the attorney for the Petitioner as

set forth below. and by filing the original of such written answer with proof of service

thereof in the Office of the Clerk at least three (3) days before the time of the Petition is



Petition is noticed to be heard; in addition thereto you must appear before the Court at the time and place hereinabove set forth for the hearing.

   **PLEASE TAKE NOTICE**, that your failure to appear and answer may result in final judgment by default for the Petitioner for all of the relief demanded in the Petition.

Dated:  White Plains, New York
         April 2, 2008

                              **CUDDY & FEDER LLP**
                              Attorneys for Petitioner
                              445 Hamilton Avenue-14th Floor
                              White Plains, New York 10601
                              (914) 761-1300

                              By: _____
                                    Joshua E. Kimerling

TO:   Cheryl Wasserman
      173 Martine Avenue
      White Plains, New York  10601

CAF 89R257 1



CITY COURT OF THE CITY OF WHITE PLAINS
COUNTY OF WESTCHESTER:  STATE OF NEW YORK
------------------------------------------------------------------X

COURT-MARTINE ASSOCIATES,

                         Petitioner-Landlord,

      -against-

CHERYL WASSERMAN
173 Martine Avenue
street level & basement underneath
White Plains, New York 10601, in the building
known as 167-183 Martine Avenue and 39-55
Court Street, White Plains, New York 10601,

                      Respondent-Tenant,

      -and-

"JOHN DOE" and "JANE DOE",

                Respondents/Undertenants.

the names of the undertenants being fictitious
and unknown to Petitioner, the persons intended
being in possession of the Premises hereinabove
described.
------------------------------------------------------------------X

**VERIFIED PETITION**
(HOLDOVER)

Index No.

## TO THE CITY COURT OF THE CITY OF WHITE PLAINS:

Petitioner, Court-Martine Associates ("Petitioner" or "Landlord"), by its attorneys,

Cuddy & Feder LLP, as and for its Verified Petition herein, against Respondent-Tenant

Cheryl Wasserman ("Tenant" or "Respondent"), respectfully alleges as follows:

          1.     Petitioner is a New York partnership having offices at c/o Minskoff

Grant Realty & Management Corp., 1350 Avenue of the Americas, 32nd Floor, New

York, New York 10019.

          2.     Petitioner is the landlord and owner in fee of the Premises, which

consist of certain street level store space (and basement thereunder) located at and

known as 173 Martine Avenue, White Plains, County of Westchester, New York 10601



(the "Premises"), as depicted in the lease plan annexed hereto and made a part hereof as Exhibit "A", and as located in the building known as 167-183 Martine Avenue and 39-55 Court Street, White Plains, County of Westchester and State of New York 10601.

      3.      Petitioner is authorized to institute and maintain this proceeding.

      4.      Tenant is an unlawful holdover occupant of the Premises.

      5.      Upon information and belief, "John Does" and "Jane Does" are fictitious and unknown undertenants or occupants who may claim a right of possession of the Premises.

      6.      On or about the 11th day of March, 1998, Petitioner, as Landlord and Respondent, as Tenant, entered into a written lease agreement (the "Lease") for the Premises. A copy of the Lease is annexed hereto and made a part hereof as Exhibit "B".

      7.      The Lease, by its express terms, terminated and expired on March 31, 2008 (the "Expiration Date").

      8.      Paragraph 21 of the Lease provided as follows:

"21. End of Term

"Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last term of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day."

      9.      Based on the above, the term of the Lease expired, ended and terminated by its unambiguous terms on March 31, 2008.

C&C 998262.1



10.    Tenant now unlawfully holds over after the Expiration Date of the Lease and continues in possession of the Premises without the permission of the Petitioner.

11.    The Premises herein sought to be recovered by Landlord are commercial premises and are situated within the territorial jurisdiction of this Court.

12.    The Premises are not the residence of Respondent.

13.    The Premises are not subject to the Emergency Tenant Protection Act and are not a multiple dwelling.

14.    The Premises are not subject to rent stabilization.

15.    Based on the above, Petitioner respectfully requests Judgment against Respondent awarding Landlord possession of the Premises, a Warrant to remove Respondent and all other occupants from possession of the Premises, plus an award of use and occupancy fees for the Premises for the holdover period of April 1, 2008 through and including the date Landlord obtains possession of the Premises, together with attorney's fees, costs and disbursements of this proceeding, and such other and further relief as to the Court may seem just and proper.

16.    No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, Petitioner respectfully requests Judgment against Respondent awarding Landlord possession of the Premises, a Warrant to remove Respondent and all other occupants from possession of the Premises, plus an award of use and occupancy fees for the Premises for the holdover period of April 1, 2008 through and including the date Landlord obtains possession of the Premises, together with attorney's

C&F 858262 1



fees, costs and disbursements of this proceeding, and such other and further relief as to

the Court may seem just and proper.

Dated:    White Plains, New York
          April 2, 2008

                          **CUDDY & FEDER LLP**
                          Attorneys for Petitioner-Landlord
                          445 Hamilton Avenue-14[th] Floor
                          White Plains, New York 10601
                          (914) 761-1300

                          By: _____
                              Joshua E. Kimerling

C&F 698262.1

## VERIFICATION

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

FRANCIS C. GRANT III ~~CEO of Manket Graw Realty a Managemen Cell, the Managing~~ being duly sworn, deposes and says:

I am the PRES of Petitioner in the within proceeding. I have read the annexed Petition, know the contents thereof and the same are true to my knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true based on the books and records of Petitioner.

_____
Francis C. Grant III

Sworn to before me this 2nd
day of April, 2008

_____
Notary Public

ELIZABETH J. COTTRILL
Notary Public - State of New York
No. 01CO6181901
Qualified in New York County
My Commission Expires February 11, 20 12

# EXHIBIT 5

| | |
|---|---|
| **From:** | Lockard, Michael |
| **Sent:** | Wednesday, April 09, 2008 4:53 PM |
| **To:** | jkimerling@cuddyfeder.com |
| **Cc:** | rminskoff@mac.com; DOlasov@thelen.com; robb@helical.com; minskoffbreede@yahoo.com; aminskoff@mac.com; Buckey, Christopher; Golden, Thomas |
| **Subject:** | FW: 82-83rd Street. Venture/Freshie's |

Mr. Kimerling,

We are counsel for MYCA, LLC.   It is our understanding, per David Olasov's email below, that you have been instructed or retained by Minskoff Grant Realty & Management Corp. ("MGRMC") to take legal action with respect to Freshie's Stationers, a tenant at property owned by 82nd-83rd Street Venture (the "Partnership").

MYCA owns a 6.25% partnership interest in the Partnership and a 17.6% partnership interest in Court-Martine Associates, a partnership that owns a 75% partnership interest in 82nd-83rd Street Venture.  Alan and Royanne Minskoff own a 7.8125% partnership interest in 82nd-83rd Street Venture and, through 2220 Equities Management Limited Partnership, own a 41.2% partnership interest in Court-Martine Associates.  Thus, MYCA and 2220 Equities are the majority partners in Court-Martine (58.8%), and Court-Martine, MYCA and Alan and Royanne Minskoff together are the majority partners of 82nd-83rd Street Venture (89.0625%).

Pursuant to the decision of the majority partners in 82nd-83rd Street Venture, any authority MGRMC may have had to act on behalf of the Partnership has been terminated since January 2008, though MGRMC has failed to surrender custody of Partnership books, records, accounts, and other property.  Any agreement MGRMC may have with you or your firm, and any instructions from MGRMC respecting the eviction proceedings are not approved or consented to by MYCA, the majority partners or the Partnership and do not constitute an agreement with or instructions from them.  We understand that the majority partners and the Partnership do not want the legal action to proceed.

As David's email notes, the Partnership (along with other certain partnerships) commenced an action against MGRMC in January, Index No. 08/600217 (Sup. Ct. N.Y. County), and the trial court issued a preliminary injunction against, inter alia, MGRMC continuing to hold itself out as an agent of the Partnership.  That order has been temporarily stayed pending the Appellate Division's ruling on MGRMC's motion for a stay pending appeal. Scorpio 8283 LLC, a minority partner in Court-Martine Associates, has filed an action seeking a judicial dissolution of Court-Martine Associates, No. 08 CV 510 (CLB) (S.D.N.Y.), and has filed a motion for an order permitting Scorpio to continue MGRMC as property manager for the Partnership's property notwithstanding the majority partners' decision, and that motion is being briefed.  If you would like copies of the pleadings in any of these actions, we would be happy to forward them to you.

We do not know the current status of the eviction proceedings.  David's email notes that there may be action scheduled for tomorrow, but we do not know what that action may be.  If action is scheduled for tomorrow, the proceedings likely should be adjourned so that we can decide how to resolve the action without damaging the Partnership's interests.

For your guidance, certain other partnerships in which MYCA, LLC and Alan and Royanne Minskoff, or entities controlled by them, are partners have elected, by majority vote, to terminate any agency relationship MGRMC may have had: Post-Broadway Associates, 77th-Queens Associates and Halstead-Harrison Venture.  Alan and Royanne Minskoff's email mentions another matter in which your firm may be involved respecting Halstead-Harrison Associates; I am not aware of the particulars of that matter and cannot make any comment on it at this time.

If you have any questions, please feel free to contact me at mlockard@akingump.com or 212.872.7439.

-Michael

Michael D. Lockard | Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue | New York, New York 10022 | (212) 872-7439 (voice) | (212) 872-1002 (fax) | mlockard@akingump.com

---

**From:** Robb Aley Allan [mailto:robb@helical.com]
**Sent:** Wednesday, April 09, 2008 2:49 PM
**To:** Lockard, Michael
**Cc:** Sara Allan
**Subject:** Fwd: 82-83rd Street. Venture/Freshie's

Begin forwarded message:

> **From:** Royanne Minskoff <rminskoff@mac.com>
> **Date:** April 9, 2008 10:04:49 AM EDT
> **To:** David Olasov <DOlasov@thelen.com>, Josh Kimerling <jkimerling@cuddyfeder.com>
> **Cc:** Robb Aley Allan <robb@helical.com>, Michael Breede <minskoffbreede@yahoo.com>, Alan Minskoff <aminskoff@mac.com>
> **Subject:** Re: 82-83rd Street. Venture/Freshie's

Hi Josh,

As David notes below, we did not authorize or approve holdover or eviction proceedings against this tenant and respectfully request that you withdraw this action and take no further action on behalf of this partnership.

Please note that David Olasov and his firm were retained by a majority in interest of this partnership, 77th Queens Associates, Halstead and Harrison Associates Venture over a year ago. Other than the specific legal action you are currently involved in at Halstead and Harrison, legal services for these partnerships should be provided by the partnership's choice of counsel.

Kind Regards,
Alan & Royanne Minskoff

On Apr 8, 2008, at 2:26 PM, Olasov, David wrote:

Josh,

This will confirm our discussion of this afternoon. It appears that a majority in interest of the partners of the referenced entity do not wish the holdover proceeding against Cheryl Wasserman, now scheduled for this Thursday, to go forward. As I understand matters, the partners, by majority vote, in December voted to terminate the agency of Minskoff-Grant Realty and Management Corp. effective December 31, 2007. Minskoff-Grant has resisted its termination on contractual and perhaps other grounds. For personal reasons other than legal conflict, neither my firm nor I are representing any of the parties to the proceedings in which such disputes are being heard. An order of the Supreme Court directing the turnover of books and records of the partnership has been temporarily stayed pending review of the Appellate Division. As a result access to records is not common to all the partners and the "old" and "new" managing agent, and relations between them are frayed, to say the least. A "new" managing agent, Armstrong Realty Management Corp. is in the wings, but, in the absence of access to records, banking accounts and funds, is not functioning fully. Minskoff-Grant, by reason of the termination notice, is also necessarily not functioning fully.

Minskoff-Grant sent this tenant a renewal proposal, for a new 10-year term, which the owners recently reviewed and rejected on economic grounds. It seems that the renewal was on terms less financially advantageous to the landlord than either the present lease terms or those in a renewal option that the tenant sought out of time to exercise. I am informed that the owners (that is, a majority of the partners) wish to sign a shorter term extension, and that the tenant is amenable to such extension. Accordingly, by this email I am asking the partners to give you direct instructions concerning the conduct of this litigation and the adjournment. According to my notes, Alan and Royanne Minskoff own, directly or through a partnership vehicle 38.7125% of this landlord, Sara Allan, with her husband Robb Allan, through an LLC owns 19.45%, Michael and Patricia Breede, through two LLCs, own 38.7125% and Stacey Minskoff owns 3.125%.

In order to protect you and me from any unpleasantness or uncertainty, I am asking the partners on the email to convey by their reply instructions on which you should rely. I believe it to be sufficient at the moment for the proceeding to be adjourned.

Call me if you have any questions.

Regards,

---

**David M. Olasov**
dolasov@thelen.com
**Thelen Reid Brown Raysman & Steiner LLP**
**875 Third Avenue, 10th Floor | New York, NY 10022-6225**
**tel: 212.603.2231 | fax: 212.812.3335**

| ☒ www.thelen.com |
|---|

---

```
==========
This message may contain confidential and/or privileged
information.
This information is intended to be read only by the individual
or entity
to whom it is addressed.  If you are not the intended
recipient, you are
on notice that any review, disclosure, copying, distribution
or use of
the contents of this message is strictly prohibited. If you
have received
this message in error, please notify the sender immediately
and delete or
destroy any copy of this message.

Tax Advice Disclosure: To ensure compliance with requirements
imposed by
the IRS, we inform you that any U.S. federal tax advice
contained in this
communication (including any attachments) is not intended or
written to be
used, and cannot be used, for the purpose of (i) avoiding
penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to
another party any transaction or matter addressed herein.
```

## <u>CERTIFICATE OF SERVICE</u>

I, Michael D. Lockard, an attorney with the law firm of Akin Gump Strauss Hauer &
Feld, hereby certify that on this 17th day of April 2008, I caused to be served, via email delivery
a copy of (1) the Declaration Of Michael D. Lockard In Further Support Of Defendants' Joint
Motion To Dismiss The Complaint And In Opposition To Plaintiff's Motion For Summary
Judgment; (2) the Declaration Of Sara Minskoff Allan In Further Support Of Defendants' Joint
Motion To Dismiss The Complaint And In Opposition To Plaintiff's Cross-Motion For Summary
Judgment; (3) MYCA, LLC's Reply Memorandum Of Law In Further Support Of Defendants
Joint Motion To Dismiss The Complaint And In Opposition To Plaintiff's Cross-Motion For
Summary Judgment; and (4) MYCA, LLC's Response To Plaintiff's Local Rule 56.1 Statement
to:

> WILLKIE FARR & GALLAGHER
> Thomas H. Golden
> 787 Seventh Avenue
> New York, New York 10019
>
> *Counsel for plaintiff Scorpio 8283 LLC*
>
> -and-
>
> WHITEMAN OSTERMAN & HANNA LLP
> Philip H. Gitlen
> Christopher E. Buckey
> One Commerce Plaza
> Albany, New York 12260
>
> *Counsel for defendant*
> *2220 Equities Management Limited Partnership*

Dated: New York, New York
       April 17, 2008

Michael D. Lockard