UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SCORPIO 8283 LLC,

Plaintiff,

v.

2220 EQUITIES MANAGEMENT LIMITED PARTNERSHIP and MYCA, LLC,

Defendants.

---------------------------------------------------------------x

No. 08 CV 510 (CLB)
**FILED BY ECF**

PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS CROSS-MOTIONS FOR:
(1) AN ORDER DECLARING THE PARTNERSHIP DISSOLVED AND
(2) AN ORDER DIRECTING AN EVIDENTIARY HEARING BE HELD
WITH RESPECT TO THE APPOINTMENT OF A WINDING-UP PARTNER

WILLKIE FARR & GALLAGHER LLP
Thomas H. Golden (TG-1467)
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for Plaintiff Scorpio 8283 LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 2

ARGUMENT ........

I. THE UNDISPUTED IRRECONCILABLE DIFFERENCES AMONG THE PARTNERS WARRANT SUMMARY JUDGMENT AS TO PLAINTIFF'S REQUEST FOR DISSOLUTION ........ 3

A. Plaintiff's Motion For Summary Judgment Is Timely ........ 3

B. All Parties Agree That The Partners Have Been In A State Of "Sharp Discord" Regarding The Day-To-Day Operations Of The Partnership's Affairs ........ 4

C. Partnerships At Will Nonetheless Are Eligible For Judicial Dissolution ........ 8

II. PLAINTIFF SHOULD BE APPOINTED UNDER PARTNERSHIP LAW § 75 TO OVERSEE THE PARTNERSHIP'S AFFAIRS DURING THE WINDING-UP PROCESS ........ 9

A. Plaintiff Has Requested The Appointment Of A Partner To Continue The Affairs Of The Business During The Winding-Up Process And Has Not Requested The Appointment Of A Receiver ........ 9

B. Plaintiff Should Be Appointed Under Partnership Law § 75 ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

## CASES

*In the Matter of the Application of Taines*, 111 Misc. 2d 559, 444 N.Y.S.2d 540 (Sup. Ct. New York County 1981) .......... 7

*Cahill v. Haff*, 248 N.Y. 377 (1928) .......... 8

*Goergen v. Nebrich*, 4 A.D.2d 526, 167 N.Y.S.2d 491 (4th Dep't 1957) .......... 9,10

*Harshman v. Pantaleoni*, 294 A.D.2d 687, 741 N.Y.S2d 348 (3d Dep't 2002) .......... 4

*Jones v. Jones*, 15 Misc. 2d 960, 179 N.Y.S.2d 480 (Sup. Ct. Kings County 1958) .......... 7

*Krulwich v. Posner*, 291 A.D.2d 301, 738 N.Y.S.2d 315 (1st Dep't 2002) .......... 5

*Natoli v. Carriage House Motor Inn, Inc.*, No. 85-CV-1457, 1988 WL 53397 (N.D.N.Y. May 24, 1988) .......... 6,7-8

*Netburn v. Fischman*, 81 Misc. 2d 117, 364 N.Y.S.2d 727 (Sup. Ct. Bronx County 1975) ... 9,10

*Non-Linear Trading Co. v. Braddis Associates, Inc.*, 243 A.D.2d 107, 675 N.Y.S.2d 5 (1st Dep't 1998) .......... 8

*Phillip v. Von Raven*, 26 Misc. 552, 57 N.Y.S. 701 (Sup. Ct. New York County 1899) ........ 5,10

*Reisman v. Levy*, 234 A.D. 898, 254 N.Y.S. 979 (2d Dep't 1931) .......... 11

*Schneider v. Green*, No. 88 CIV. 2931, 1990 WL 151142, at *10 (S.D.N.Y. Oct. 1, 1990) ........ 5

*Seligson v. Russo*, 16 A.D.3d 253, 792 N.Y.S.2d 34 (1st Dep't 2005) .......... 4

*In re Sturman*, 222 B.R. 694 (Bankr. S.D.N.Y. 1998) .......... 8

## OTHER AUTHORITIES

Fed. R. of Civ. P. 56 .......... 3

N.Y. Business Corporation Law § 1104-a .......... 7

N.Y. Partnership Law § 40 .......... 6

N.Y. Partnership Law § 50 .......... 6

N.Y. Partnership Law § 62 .......... 8

N.Y. Partnership Law § 63 .......... *passim*

N.Y. Partnership Law § 75 .......... 9,10,11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SCORPIO 8283 LLC,

Plaintiff,

v.

2220 EQUITIES MANAGEMENT LIMITED PARTNERSHIP and MYCA, LLC,

Defendants.

------------------------------------------------------------x

No. 08 CV 510 (CLB)
**FILED BY ECF**

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTIONS FOR: (1) AN ORDER DECLARING THE PARTNERSHIP DISSOLVED AND (2) AN ORDER DIRECTING AN EVIDENTIARY HEARING BE HELD WITH RESPECT TO THE APPOINTMENT OF A WINDING-UP PARTNER**

Plaintiff Scorpio 8283 LLC ("Scorpio") respectfully submits this reply memorandum of law in further support of its motion for Orders (1) declaring the dissolution of the partnership that is the subject of the above-captioned action; and (2) setting an evidentiary hearing to determine whether Scorpio should be appointed "winding-up" partner.[1]

---

[1] Defendants MYCA, LLC ("MYCA") and 2220 Equities Management Limited Partnership ("2220") filed separate memoranda in opposition to Plaintiff's cross-motions. Defendant MYCA's memorandum ("MYCA Opp'n Mem." or "MYCA's Opposing Memorandum") incorporates and adopts Defendant 2220's memorandum ("2220 Opp'n Mem."). While Defendant 2220 does not adopt MYCA's Opposing Memorandum, MYCA's Opposing Memorandum asserts only one unique argument, which is addressed in Point II.A below.

## PRELIMINARY STATEMENT

As discussed in depth in Plaintiff's Opening Memorandum,[2] this action is one of six pending litigations rooted in the irreversible disintegration of relationships among various members of the Minskoff family and the resulting Balkanization of partners into two opposing camps. As a result, the partners can no longer work together constructively. Consequently, Plaintiff, in its cross-motions, has asked the Court formally to dissolve the malfunctioning Partnership[3] and to appoint Scorpio to manage the affairs of the Partnership during the winding-up process.

In response, Defendants — who, in their own motion, raised no objection to dissolution of the Partnership — assert that the Court should refuse to dissolve the Partnership because Defendants' faction controls a majority share of the Partnership and therefore possesses the technical ability to make decisions on the Partnership's behalf. As discussed in Point I below, Defendants are incorrect in assuming that their majority interest in the Partnership entitles them to continue the Partnership to the exclusion of their minority-share Partners. Indeed, the malfunctioning of the Partnership that has resulted from the total breakdown in interpersonal relationships among the partners has rendered dissolution both legally proper and necessary.

Defendants also argue that, should the Partnership be dissolved, Scorpio should not be appointed to oversee the Partnership's affairs during the winding-up process. Defendants apparently would prefer to delegate that responsibility to a third-party management company that

---

2 As used in this memorandum, "Plaintiff's Opening Memorandum" or "Pl.'s Opening Mem." refer to Plaintiff's Memorandum Of Law (1) In Opposition To Defendants' Joint Motions To Dismiss; And (2) In Support Of Its Cross-Motions For: (i) An Order Declaring The Partnership Dissolved And (ii) An Order Directing An Evidentiary Hearing Be Held With Respect To The Appointment Of A Winding-Up Partner, filed on March 26, 2008.

3 Unless otherwise defined, capitalized terms in this memorandum have the meaning ascribed to them in Plaintiff's Opening Memorandum.

has no ownership interest in the Partnership and no experience with the Property. As discussed in Point II below, Plaintiff emphatically disagrees with that approach and respectfully suggests that the Court would be aided by an evidentiary hearing that will allow the Court personally to assess the relative fitness of any partners who desire to oversee the business of the Partnership during the winding-up process.

## I. THE UNDISPUTED IRRECONCILABLE DIFFERENCES AMONG THE PARTNERS WARRANT SUMMARY JUDGMENT AS TO PLAINTIFF'S REQUEST FOR DISSOLUTION.

### A. Plaintiff's Motion For Summary Judgment Is Timely.

Defendants misstate the law in asserting that Plaintiff's cross-motion for summary judgment is "premature" because no Defendant has answered and no discovery has taken place. Federal Rule of Civil Procedure 56(a) provides that a plaintiff may file a motion for summary judgment "at any time after (1) 20 days have passed from commencement of the action; or (2) the opposing party serves a motion for summary judgment." Fed. R. Civ. P. 56(a). The Advisory Committee notes regarding the adoption of that provision explicitly state that "[t]his will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase 'at any time after the pleading in answer thereto has been served' operate[d] to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer ha[d] been filed . . . . In many cases [that original rule] merely represent[d] unnecessary delay." Advisory Committee Notes to 1946 Amendment to Fed. R. Civ. P. 56(a). Here, Plaintiff filed its cross-motion for summary judgment over two months after commencing the action *and* after Defendants themselves had moved for summary judgment. Plaintiff's cross-motion therefore is timely and is ripe for consideration by the Court.

**B. All Parties Agree That The Partners Have Been In A State Of "Sharp Discord" Regarding The Day-To-Day Operations Of The Partnership's Affairs.**

Defendants accept that there has been "sharp discord" among the partners regarding the "management and day-to-day operations of the propert[y]" but claim that such discord does not justify dissolution of the Partnership. (Defendant 2220's Response to Local Rule 56.1 Statement, at ¶¶ 3-4; Defendant MYCA's Response to Local Rule 56.1 Statement, at ¶¶ 3-4.) Rather, Defendants reason that because one of the two opposed camps[4] of partners possesses a majority interest in the Partnership, that camp's technical ability to make unilateral decisions regarding Partnership affairs renders judicial dissolution inappropriate. (*Id.*; 2220 Opp'n Mem. at 11; MYCA Opp'n Mem. at 11, 12-13.) Defendants are wrong in suggesting that only a 50/50 deadlock among partners justifies dissolution.

Needless to say, such a deadlock among partners and a partnership's consequent inability to function is among the situations that would render dissolution equitable. (2220 Opp'n Mem. at 11 (citing *Seligson v. Russo*, 16 A.D.3d 253, 792 N.Y.S.2d 34 (1st Dep't 2005) and *Harshman v. Pantaleoni*, 294 A.D.2d 687, 741 N.Y.S.2d 348 (3d Dep't 2002)); MYCA Opp'n Mem. at 12-13 (same).) Defendants offer no authority, however, and Plaintiff is aware of none, for the very different proposition that New York Partnership Law Section 63(1)(f) applies *only* in that particular circumstance. To the contrary, the statute speaks for itself, providing for

---

4 As is reflected in the six pending litigations among the partners of this and other Minskoff family partnerships, discussed in Plaintiff's Opening Memorandum at pages 10-12, including litigation instigated by Defendants, two distinct factions of partners and family members have developed and aligned themselves strongly against one another. That division also is reflected in Defendants' consistent references to the minority partners as "MGRMC's principals and their allies." (MYCA Opp'n Mem. at 2, 3; 2220 Opp'n Mem. at 7.)

dissolution pursuant to Section 63(1)(f) [5] "whenever . . . circumstances render dissolution equitable."

Dissolution of a partnership under Section 63(1)(f) is proper where the disintegration of personal relationships among partners prevents the partnership from functioning properly. Thus, in *Schneider v. Green*, plaintiff successfully sought to dissolve his joint ventures with defendant "on the grounds that the relationship between himself and the defendant ha[d] deteriorated beyond repair." No. 88 CIV. 2931, 1990 WL 151142, at *10 (S.D.N.Y. Oct. 1, 1990). The Court first noted that "the legal consequences of a joint venture are equivalent to those of a partnership. Thus, while the specific rights, duties, and liabilities of the parties to a joint venture are governed by the contract between them, the general rules as to rights and duties are analogous to law of partnership." *Id.* at *10 n.13 (internal quotation marks and citations omitted). The Court then held that because of the hostile relations that had developed between the partners, "it is no longer productive or possible for the parties to work together and plaintiff is entitled to have the joint ventures dissolved and to an accounting between the parties." *Id.* at *11.

The court in *Krulwich v. Posner* also applied Section 63(1)(f) to dissolve a general partnership in light of "irreconcilable dissension" that had developed between the partners, who were brothers. 291 A.D.2d 301, 302, 738 N.Y.S.2d 315, 316 (1st Dep't 2002). The court held that judicial dissolution was appropriate where, as here, "[the partners'] differences regarding the management of the partnership have become irreconcilable." *Id.* at 302, N.Y.S.2d at 317. *Cf. Phillip v. Von Raven*, 26 Misc. 552, 57 N.Y.S. 701, 702 (Sup. Ct.

---

5 Unless otherwise noted, sections referenced in this memorandum refer to provisions of the New York Partnership Law.

New York County 1899) ("[A]s it is plain that there are apparently irreconcilable differences and personal ill will between the partners, rendering any co-operation in the business apparently impossible, a condition exists which is deemed sufficient to lead the court to pronounce a dissolution . . . .").

As the court noted in *Krulwich*, "[t]he law bestows on each partner [in a general partnership] the 'right to participate in the management' of the partnership." 291 A.D.2d at 302, 738 N.Y.S.2d at 317 (citing N.Y. Partnership Law § 50(c)). *See also* N.Y. Partnership Law § 40(5). Here, however, the partners are enmeshed in personal conflict that has resulted in a distinct group of partners with a majority interest taking over the Partnership's affairs to the complete exclusion of the minority. In short, the solidifying of hostile interpersonal relationships among the partners has rendered the Partnership unworkable. The Partnership therefore should be dissolved pursuant to Section 63(1)(f).

Indeed, even Defendants themselves begrudgingly admit that dissolution is equitable when "some cause . . . renders it impracticable to carry on the business." (2220 Opp'n Mem. at 10 (quotation marks, citation, and emphasis omitted).) Although Defendants baldly assert that efforts by a solidified group of partners to deprive other partners of the opportunity to participate in partnership affairs does not render it "impractical to carry on the business," *id.* at 13 (quotation marks and citation omitted), they offer no justification for that assertion. Nor do they suggest anything other than a 50/50 deadlock that, in their view, might render it "impracticable" for a group of people to work together as partners.

The cases on which Defendants rely add little to the analysis. Indeed, *Natoli v. Carriage House Motor Inn, Inc.*, No. 85-CV-1457, 1988 WL 53397 (N.D.N.Y. May 24, 1988), the primary case upon which Defendants rely, predominantly concerned a request for dissolution

of a *corporation*. Although Defendants assert that the standard for dissolving a corporation is "analogous[]" to that for dissolving a partnership, 2220 Opp'n Br. at 10-11, and proceed to cite to corporate dissolution cases throughout their memoranda, there are significant differences between the two. Dissolution of a corporation, unlike dissolution of a partnership, is considered a "drastic" remedy, *Natoli,* 1988 WL 53397 at *10, and a minority shareholder seeking dissolution of a corporation must meet a more stringent standard than is required in the partnership context. *See In the Matter of the Application of Taines*, 111 Misc. 2d 559, 564, 444 N.Y.S.2d 540, 543 (Sup. Ct. New York County 1981) ("[U]nless there is a contrary agreement amongst partners, any partner can cause [a partnership's] dissolution. However, to dissolve a corporation . . . more is necessary . . . ."). New York Business Corporation Law Section 1104-a sets forth the permissible grounds for dissolution of a corporation based upon the request of a minority shareholder and does not provide for dissolution on general equitable grounds.

As to the *partnership* at issue in *Natoli*, the sole question considered by the court with respect to the propriety of judicial dissolution was whether minimal advances of partnership funds by one partner "without the consent of his partner, constitute adequate grounds for dissolution under Sections 63(d) and (f) of the New York Partnership Law." 1988 WL 53397 at *11. *Natoli* did *not* address the propriety of judicial dissolution in a situation in which disagreements or differences among the partners have impacted the management of the partnership or its property. *Id.* As Defendants themselves admit, "Partnership Law § 63 and its various subdivisions are intended to permit a judicial decree of dissolution . . . 'if the acts complained of directly [affect] the management of the partnership.'" (2220 Opp'n Mem. at 10 (citing *Jones v. Jones*, 15 Misc. 2d 960, 962, 179 N.Y.S.2d 480, 483 (Sup. Ct. Kings County 1958.) It thus is unsurprising that the court in *Natoli* held that the (fully repaid) advances of

partnership funds to other entities did not establish cause for dissolution under Section 63. *Natoli*, 1988 WL 53397 at *11.

**C. Partnerships At Will Nonetheless Are Eligible For Judicial Dissolution.**

Finally, Defendants argue that Plaintiff should not be permitted to request judicial dissolution pursuant to Section 63 because the Partnership is one at will that may be dissolved upon the act of any partner pursuant to Section 62(1)(b). The fact that a partnership is at will, however, does not preclude judicial dissolution. The legislature and the courts have contemplated that it will be necessary in some instances for a court to get involved in partnership disputes and to dissolve partnerships judicially. Thus, Section 62 lists a number of alternative methods by which a partnership can be dissolved, including by "decree of court under section sixty-three." Courts have recognized Section 63 as an alternative to dissolution by an individual partner, even where the partner has the unilateral right to cause dissolution. In *Cahill v. Haff*, for example, the court noted that the partnership could have been terminated by any of several alternative methods, including 60 days' notice as provided for in the agreement, repudiation by any partner, or by the court pursuant to Section 63. 248 N.Y.377, 382 (N.Y. 1928); *see also Non-Linear Trading Co. v. Braddis Associates, Inc.*, 243 A.D.2d 107, 119, 675 N.Y.S.2d 5, 14 (1st Dep't 1998) ("The partnership agreement provides for dissolution upon consent of the partners . . . . [and j]udicial dissolution may be decreed . . . where equitable considerations mandate.").

In circumstances such as those present here, where tremendous discord among the partners suggests that an orderly dissolution will not be possible without judicial oversight, judicial dissolution offers a more practical alternative to a partner's dissolving the partnership unilaterally. *Cf. In re Sturman*, 222 B.R. 694, 715 (Bankr. S.D.N.Y. 1998) ("While judicial intervention is not always necessary to oversee the winding up of partnership affairs, in a case

like this, dissolution by decree of a court seems to be required, given the convoluted nature of the ownership of the Partnership interests, the friction among the Partners, the outstanding offer to purchase the [property] and the other attendant circumstances which would render such a dissolution equitable.") (citing N.Y. Partnership Law §§ 63(1)(f) and (2)).

For all of the foregoing reasons, Defendants' suggestion that the Court should decline to consider Plaintiff's motion for summary judgment therefore is groundless. For those reasons and for the reasons set forth in Plaintiff's Opening Memorandum, Plaintiff respectfully submits that summary judgment should be granted and the Partnership should be dissolved.

## II. PLAINTIFF SHOULD BE APPOINTED UNDER PARTNERSHIP LAW § 75 TO OVERSEE THE PARTNERSHIP'S AFFAIRS DURING THE WINDING-UP PROCESS.

### A. Plaintiff Has Requested The Appointment Of A Partner To Continue The Affairs Of The Business During The Winding-Up Process And Has Not Requested The Appointment Of A Receiver.

As discussed in Plaintiff's Opening Memorandum, *see* Pl.'s Opening Mem. at 15, New York Partnership Law grants the Court broad discretion to oversee the dissolution process, including the authority to designate one or more partners to manage the partnership's affairs during that process. Section 75, in particular, provides the Court with the discretion to "authorize the partnership business to be continued . . . by one or more partners" during the winding-up process. N.Y. Partnership Law § 75. That judicial power has been long-recognized by New York courts. *See, e.g., Netburn v. Fischman*, 81 Misc. 2d 117, 364 N.Y.S.2d 727 (Sup. Ct. Bronx County 1975); *Goergen v. Nebrich*, 4 A.D.2d 526, 167 N.Y.S.2d 491 (4th Dep't 1957).

Plaintiff's cross-motion requests the Court to exercise its discretion to appoint such a "winding-up partner" pursuant to Section 75. (Pl.'s Opening Mem. at 2, 13, 15-17.) In

opposing Plaintiff's request, however, Defendant MYCA[6] inexplicably asserts that a winding-up partner is identical to a temporary receiver and proceeds to set forth inapplicable arguments and authority relating to receivers.[7] The appointment of a receiver, however, is a distinct solution that a court may implement in *addition* to appointing a winding-up partner under Section 75. Indeed, Section 75 explicitly recognizes that the designation of a winding-up partner and the appointment of a receiver are separate and distinct. N.Y. Partnership Law § 75 (noting that in addition to appointing a partner to oversee the business during the winding-up process, the court may, *inter alia*, provide for payments to retiring partners, creditors, and others "with or without the appointment of a receiver . . ."). *See also Goergen*, 4 A.D.2d at 528, 167 N.Y.S.2d at 492 (finding that the court is vested with considerable discretion under Section 75 and may "confide the continuation of the business pending the final liquidation to a receiver *or* to a surviving partner," among other options) (emphasis added).

Furthermore, a court may opt to appoint a winding-up partner under circumstances in which a receiver may be inappropriate. *See, e.g., Netburn*, 81 Misc. 2d at 118, 364 N.Y.S.2d at 729 (holding that the plaintiff failed to make the requisite showing for the appointment of a receiver, and instead authorizing defendant to continue the partnership business pursuant to Section 75); *Phillip*, 26 Misc. at 553, 57 N.Y.S. at 702-03 (holding that the appointment of a receiver was too "drastic [a] provisional remed[y]" and opting instead to appoint winding-up partners to oversee the partnership's affairs during the pendency of the

---

6 Defendant 2220 does not assert that Plaintiff has requested a temporary receiver or that a winding-up partner somehow is equivalent to a temporary receiver.

7 Defendants note that a winding-up partner may not be appointed unless and until the Partnership is dissolved. (2220 Opp'n Mem. at 18-19; MYCA Opp'n Mem. at 13-14.) Plaintiff does not disagree. As discussed in Point I above, however, Plaintiff has moved for summary judgment with respect to its request for dissolution. Plaintiff's motion for the appointment of a winding-up partner therefore is timely.

action); *Reisman v. Levy*, 234 A.D. 898, 254 N.Y.S. 979 (2d Dep't 1931) (modifying the lower court's order to strike out the provision appointing a receiver, and instead authorizing the partnership business to be continued by the defendant pursuant to Section 75).

**B. Plaintiff Should Be Appointed Under Partnership Law § 75.**

For the reasons set forth in Plaintiff's Opening Memorandum, Pl.'s Opening Mem. at 17-19, Plaintiff[8] is in the best position to manage the affairs of the Partnership (i.e., the management of the Property) during the winding-up process. While Defendants have asserted that they do not want Plaintiff to assume the position of winding-up partner, they have not offered any meaningful alternative proposal. Instead, Defendants apparently intend for the Partnership's business to be conducted during the winding-up process by a third-party property manager with no personal ties to the Partnership and no experience in managing the Property. (MYCA Opp'n Br. at 14-15.)

No third-party property manager has the knowledge and experience of MGRMC with respect to the Property at issue and Plaintiff therefore would engage MGRMC to resume managing the Property during the winding-up process. Appointing Plaintiff to oversee the Partnership's business during the winding-up process thus will ensure as quick and efficient a process as possible. That readily will become apparent, Plaintiff believes, through an evidentiary hearing regarding the appointment of a winding-up partner. Plaintiff therefore respectfully renews its request that the Court hold such a hearing so that it may gauge personally the level of commitment and skill that various players may contribute if permitted to assume that role.

---

[8] Defendants imply that Plaintiff seeks to have MGRMC itself appointed as winding-up partner. (2220 Opp'n Mem. at 16; MYCA Opp'n Mem. at 14-15.) In fact, Plaintiff has requested that Plaintiff itself be appointed to that role and has asserted that it would seek the assistance of MGRMC in connection with Scorpio's own management of the winding-up process. (Pl.'s Opening Mem. at 2, 17-19, 24.) Defendants therefore are incorrect in asserting that "Plaintiff would use a non-partner, MGRMC, to manage the winding-up process . . . ." (2220 Opp'n Mem. at 19.)

4245235.1

## CONCLUSION

For all the foregoing reasons, as well as those set forth in its Opening Memorandum, Plaintiff respectfully requests that the Court (a) declare Court-Martine Associates to be dissolved, and (b) appoint Scorpio to manage Court-Martine Associates' affairs during the winding-up process.

DATED: New York, New York
April 28, 2008

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: ______________________
Thomas H. Golden (TG-1467)
(A Member of the Firm)

787 Seventh Avenue
New York, New York 10019-6099
tgolden@willkie.com
(212) 728-8000

Attorneys for Plaintiff